## A09A0108. PINEDA v. THE STATE.
### (678 SE2d 587)

MILLER, Chief Judge.

Following a jury trial, Ublester Pineda was convicted of one count of trafficking in methamphetamine (OCGA § 16-13-31 (e) (3)) and one count of possession of methamphetamine with intent to distribute (OCGA § 16-13-30 (b)). Pineda appeals following the denial of his new trial motion, asserting that the trial court erred in (i) preventing his trial counsel from challenging the existence of the State's confidential informant and (ii) allowing two-thirds of the prospective jurors to be questioned without the benefit of translation for him. Pineda also claims that his trial counsel was ineffective for failing to ensure that he understood his right to comprehend the voir dire proceedings and assist with jury selection. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the record shows that on April 21, 2005, after being contacted by a confidential informant (the "CI"), Detective U. D. Rios of the DeKalb County Police Department met with the CI, equipped him with an audio transmitter, and directed him to meet with Pineda at the Las Placitas restaurant on Buford Highway concerning a drug transaction. Detectives Rios and R. R. Lall went to the restaurant to conduct surveillance and observed Pineda drive to the restaurant in a green Oldsmobile Bravada. Via the audio transmitter, Detective Rios heard Pineda discuss a drug transaction. Specifically, Pineda agreed to bring the CI several pounds of crystal methamphetamine, but he stated that he had to retrieve the drugs from Cobb County. Pineda left the restaurant and drove to the Westminster Apartments ("Westminster") in Cobb County, followed by Detectives Rios and Lall and several other officers. Detective Lall observed Pineda go into one of the apartments empty-handed, and return to his car with a black plastic bag. A Hispanic male also exited the apartment with Pineda and got into a black Yukon. Pineda left Westminster, drove to the Las Colinas apartments and eventually entered Building No. 16, where he lived. Shortly thereafter, Detective Rios observed a black Yukon arrive outside the building, and two Hispanic males get out and enter Pineda's apartment. Approximately 20 minutes later, Pineda emerged from his apartment holding a Coleman cooler, placed it in the back of his vehicle, and drove out of the apartment complex.

Pursuant to information from Detective Rios, Detectives Fred Becker and Gordon Morrison set up surveillance on Interstate 285 near Ashford-Dunwoody Road and observed the green Oldsmobile Bravada traveling on Interstate 285 at 65-70 miles per hour. Detective Becker stopped the vehicle for speeding, asked Pineda to step out of the car, and then conducted an open-air sniff of the vehicle with his drug dog. The dog alerted on the passenger side of the vehicle, and upon entering the vehicle, the dog alerted on the back seat. Upon searching the area, Detectives Becker and Morrison found "a large quantity" of crystal methamphetamine in the Coleman cooler.

Following a pre-trial hearing, the trial court denied Pineda's motion to disclose the CI's identity and motion to suppress. In its order denying Pineda's motion for new trial, the trial court affirmed its ruling denying disclosure of the CI's identity and explained that the CI's identity was irrelevant and immaterial as the evidence did not show that the CI's testimony would have benefitted Pineda. It further indicated that Pineda's challenge to the existence of the CI was improper because there was no evidence that the informant was nonexistent.

During opening statements, on two occasions, Pineda's trial counsel challenged the State to produce the CI, arguing that there was no such person. The State objected each time on the grounds that the trial court already ruled on the issue of the CI's identity. The trial court sustained the State's objection on both occasions. Resuming his opening statement, defense counsel then challenged the validity of the speeding charge as an improper basis for searching Pineda's car, to which the State immediately objected. Outside the jury's presence, the State argued:

> Judge, you have already made a ruling regarding the confidential informant. You have already made a ruling regarding a motion to suppress. What Mr. Shafer is attempting to do now is re-litigate the motion to suppress in front of the jury. And it is well [settled] law that the Judge is the arbitrator of whether or not evidence is legally obtained and he cannot argue or even reargue or relitigate that issue in front of a jury. I am asking the Court to instruct Mr. Shafer to tailor his argument away from these arguments regarding the motion to suppress and the confidential informant. That is what he is doing now.

After hearing argument from both parties, the trial court instructed defense counsel "to stay away from the issue dealing with the confidential informant" and to "not re-litigate the motion to suppress in the presence of the jury."

On cross-examination, defense counsel elicited several admissions from Detective Rios that he had given false testimony at a preliminary hearing about his knowledge of the CI's identity or of any conversations between the CI and Pineda. Detective Rios admitted that he mischaracterized the identity of the CI and intentionally misidentified the person with whom Pineda met to protect the CI's identity.

1. Pineda contends that the trial court foreclosed his ability to present a lack of knowledge defense by preventing him from challenging the existence of the CI. We disagree.

> The trial court has broad discretion in controlling the argument of counsel and, unless it clearly appears that the court has abused this discretion and that such abuse has resulted in harm or prejudice to the objecting party, this Court will not undertake to control the exercise of such discretion.

(Citation, punctuation and footnote omitted.) *Grant v. State*, 245 Ga. App. 652, 654 (2) (538 SE2d 540) (2000).

Notwithstanding the trial court's ruling denying his motion to disclose the CI's identity, Pineda argues that he should have been allowed to argue that Detective Rios fabricated the existence of the CI in light of Detective Rios' false testimony about the CI and the State's failure to call the CI as its witness. See *Morgan v. State*, 267 Ga. 203 (476 SE2d 747) (1996) (it is proper for opposing counsel to draw an inference of fact from the failure of a party to introduce certain witnesses when there is competent evidence before the jury that the missing witness has knowledge of material and relevant facts). Given the trial court's ruling, Pineda was unable to negate evidence of the meeting between Pineda and the CI, which was derived through Detective Rios' testimony. Absent such testimony, Pineda claims there would be no evidence that he knew about the methamphetamine or that he would retrieve it from Cobb County. This claim of error is waived because Pineda's trial counsel never objected that his ability to show that he was not in knowing possession of the drugs was foreclosed by the trial court's ruling to "stay away from the issue dealing with the confidential informant." *City of Dalton v. Smith*, 210 Ga. App. 858, 859 (1) (437 SE2d 827) (1993) ("Where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court.") (citations and punctuation omitted). Nor did defense counsel make a proffer of how the CI's nonexistence would support his lack of knowledge defense. Pineda's trial counsel only objected to the ruling on the motion to

suppress, arguing that the State had a pretextual reason for stopping Pineda and the State was "sliding from one course of stratagem to another."

Even were the issue properly before us, the claim would fail. Pineda's trial counsel subjected Detective Rios to a thorough and sifting cross-examination about false testimony he had given at the preliminary hearing, thereby attempting to undermine the credibility of Detective Rios' account of meeting with the CI and listening in as the CI and Pineda discussed a drug transaction. In fact, during the new trial hearing, Pineda's trial counsel indicated that their key defense was to attack Detective Rios' credibility with his lies at the preliminary hearing and show that he fabricated the existence of the CI.

For example, on cross-examination, Pineda's trial counsel attempted to establish that Detective Rios lied about whether the CI had contact with Pineda; Detective Rios did not know the identity of the CI; and Detective Rios did not overhear any conversation between the CI and Pineda. Pineda's trial counsel similarly established that Detective Rios did not include in his investigative report any information about a conversation he overheard between the CI and Pineda. By impeaching Detective Rios with his prior contradictory statements, Pineda's trial counsel attempted to demonstrate that Detective Rios was a witness unworthy of belief as to the informant's involvement in the sequence of events which led to Pineda's arrest. Based on the foregoing, we find that the trial court's actions in limiting defense counsel's argument were not harmful to Pineda's lack of knowledge defense. *Grant*, supra, 245 Ga. App. at 654 (2). Given Detective Lall's testimony that he observed Pineda carry a Coleman cooler from his apartment and place it in the back of his vehicle, we find it highly unlikely that the jury would have reached a different verdict had the trial court given Pineda's trial counsel more leeway to argue that no CI existed.

2. Pineda also asserts that the trial court erred by failing to take action to ensure that the voir dire of the venire was translated in its entirety for his benefit. Again, we disagree.

The evidence showed that Pineda, who was of Mexican descent, had lived in the United States for ten years and, during that time frame, was continuously employed. At the time of trial, he was employed by Montview Mills. He admitted that he understood some English and was able to communicate to some degree with others in jail.

After two-thirds of the jurors had been questioned during voir dire, the trial court determined that the interpreter was not translating the proceedings for Pineda and directed the interpreter to begin doing so. In the new trial hearing, Pineda testified that he

noticed that the interpreter was not translating the voir dire proceedings when it commenced but failed to bring it to his lawyer's attention. Because Pineda failed to interpose a timely objection at trial, this issue is waived on appeal. See *Duran v. State*, 274 Ga. App. 876, 880 (4) (619 SE2d 388) (2005) (defendant waived issue of trial interpreter's lack of certification on appeal when he failed to timely object to interpreter's qualifications during pre-trial hearing and trial). Even if Pineda had objected, however, the claim of error would still fail.

It is well settled that a criminal defendant's right to be present during all critical stages of the proceedings is a "fundamental right and a foundational aspect of due process of law" (*Smith v. State*, 284 Ga. 599, 608 (4) (669 SE2d 98) (2008)), which includes the right to "see and hear, *all the proceedings* which are had against [the defendant] on the trial before the Court." *Wade v. State*, 12 Ga. 25, 29 (1852) (emphasis in original). It is undisputed that Pineda was present during voir dire. The fact that Pineda may have "missed" some portion of the colloquy between counsel and 24 potential jurors does not compromise his right to be present on a constitutional scale. "The use of an interpreter, and the extent to which he may be used in the examination of a witness, must necessarily lie within the sound discretion of the trial judge." (Citation and punctuation omitted.) *Hersi v. State*, 257 Ga. App. 63, 64 (1) (570 SE2d 365) (2002). Once the trial court noticed that the interpreter was not translating the proceedings, he quickly advised the interpreter to commence translating. Thus, Pineda's assertion is without merit.

3. Pineda also argues that trial counsel rendered ineffective assistance because he failed to take any action to ensure that Pineda understood his right to comprehend the voir dire proceedings and assist counsel. We are not persuaded.

> To succeed on an ineffective assistance of trial counsel claim, [Pineda] must show that his trial counsel rendered constitutionally-deficient performance and that actual prejudice of constitutional proportions resulted. To show sufficient prejudice, [Pineda] must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

(Citations and punctuation omitted.) *Hung v. State*, 284 Ga. 796 (671 SE2d 811) (2009).

Pretermitting whether trial counsel was deficient by failing to ensure that Pineda understood this limited part of the trial,

"[Pineda] has not pointed to any specific harm that befell him due to his alleged failure to understand the [voir dire] proceedings. . . ." *Hersi*, supra, 257 Ga. App. at 64-65 (1). Therefore, the trial court did not clearly err in concluding that Pineda failed to show prejudice.

For the reasons set forth above, we affirm the trial court's order denying Pineda's motion for new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MAY 15, 2009.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.