A07A2092. KARAFIAT v. THE STATE.
(658 SE2d 801)

PHIPPS, Judge.

A jury found Mary Therese Karafiat guilty of following too closely, failure to maintain lane, driving under the influence of alcohol to the extent she was a less safe driver, and serious injury by vehicle. Karafiat was convicted and sentenced solely for serious injury by vehicle after the court merged the other charges. On appeal, Karafiat challenges the admission of certain evidence, a jury instruction, and the rejection of her claim of ineffective trial counsel. We find no merit in these challenges and affirm.

State witnesses to the underlying incident testified to the following. On the night of October 10, 2003, a black car driven by

---

Karafiat was weaving out of its lane, "sped up towards the motorcycle" ahead of it, swerved, and then hit the back tire of the motorcycle. One witness recalled that Karafiat had been "in between lanes when she ran up over the motorcycle." An accident reconstructionist determined that the front end of Karafiat's car had overridden the back end of the motorcycle, jamming the motorcycle into the road and causing the motorcyclist, Marcus Baxley, to lose control.

After the impact, Karafiat's vehicle became airborne, flipped, and then slid off the road. Several bystanders rushed to aid Karafiat. When she rolled down her window, one bystander detected an overwhelming smell of alcohol. She also noted that Karafiat was muttering and slurring her words, that her first attempt to get out of her car was "more like falling out of the car," and that afterward she was unsteady on her feet. Another bystander also observed that Karafiat was "kind of wobbly" and "stumbled."

One of the police officers who arrived at the scene had been specifically trained in DUI investigation. He testified that a strong odor of alcohol emitted from Karafiat's breath, that her speech was slurred, and that she was swaying and having difficulty standing on her own. The officer testified that he was unable to test Karafiat's breath with an alco-sensor because she did not comply with his instructions. She also refused to submit to field sobriety evaluations. The officer determined that Karafiat was under the influence of alcohol to the point of having been a less safe driver and arrested her.

The impact had thrown Baxley off his motorcycle and knocked his helmet off his head. He was found nearby, lying on the ground, bleeding and shaking, as though in a seizure. The area around his left eye was bruised and swollen. An ambulance transported him to a hospital. He arrived comatose and required emergency surgery because of a blood clot on the brain and severe brain swelling. The procedure required the removal of a portion of his skull and left the shape of his head distorted. He was placed on life support and remained in the coma for about a month.

Baxley suffered permanent brain damage. During the several months after he awakened, Baxley required care primarily in hospital intensive care units and rehabilitation centers. Initially, he was unable to hold his head in any position; his arms and legs stiffened into withdrawn positions; his body withdrew into a fetal position, making it impossible for him to be placed in a sitting position; and he developed bed sores. Meanwhile, he underwent numerous other surgeries, including procedures upon his abdomen to insert feeding tubes and medicine pumps.

Before the accident, Baxley was a healthy, strong, 28-year-old man, 6'2" tall, weighing 230 pounds. He was employed and enjoyed hunting, fishing, woodworking, and working on vehicles. At one point

after the accident, he weighed only 115 pounds. By the time of the trial, Baxley had been adjudicated an incapacitated adult. He continued to require constant supervision and daily physical therapy. He could not fully extend his left limbs and fingers; his vision was permanently diminished; he had no hearing ability in one of his ears; he could walk only very short distances using a cane or a walker and otherwise was confined to a wheelchair; he suffered short-term memory problems; and he bore scars from the accident and from surgical incisions, including scars on his head and limbs and "very large scars on his abdomen" from the feeding and medicine tubes.

Karafiat defended against the charges by claiming that she was not DUI and that the collision had been caused by another vehicle that darted in front of her. She admitted consuming alcoholic beverages at a restaurant and a bar during the hours preceding the accident, but testified that the alcohol had not rendered her a less safe driver. She recounted that, driving home, she felt "a tap or an impact, a bump" on the side of her car. She panicked, abruptly turned the steering wheel, suddenly saw a motorcycle in front of her, and slammed on the brakes. Karafiat admitted that her car collided with the motorcycle.

Karafiat presented a witness who testified that immediately after hearing a collision, he saw a white SUV being maneuvered in an "S type formation trying to get away." It next hastily made a U-turn and proceeded in the opposite direction. Karafiat also presented a character witness who testified that she had never known Karafiat to drink excessively in the 12 or 13 years they had been neighbors.

1. Karafiat contends that the trial court erred by allowing the officer who conducted the DUI investigation to testify: "All I know is that . . . she was DUI." Karafiat asserts that this testimony impermissibly invaded the jury's province of deciding the ultimate issue on the DUI charge. Because no timely objection to this testimony was raised, however, this issue was waived.[1]

2. Karafiat contends that, during its final charge to the jury, the court gave an erroneous instruction on the offense of serious injury by vehicle. But when the court asked for objections to the final charge, Karafiat's counsel responded that the defense had none, and he did not reserve the right to challenge the charge later. Consequently, this issue was waived.[2]

3. Karafiat contends that the trial court erred by rejecting her claim of ineffective trial counsel. She asserts that her trial counsel performed deficiently by not objecting to the officer's testimony cited

---

[1] *Minor v. State*, 264 Ga. 195, 196 (1) (442 SE2d 754) (1994).

[2] *Sampson v. State*, 282 Ga. 82, 84-85 (5) (646 SE2d 60) (2007).

above in Division 1, by not objecting to the instruction on serious injury by vehicle that she claims was erroneous,[3] and by not objecting to certain questions the prosecutor posed to her character witness.

> To prevail on such claim, a defendant must establish, pursuant to *Strickland v. Washington*,[4] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[5]

(a) Karafiat argues that her trial counsel erred by not objecting to the investigating police officer's opinion that she had been DUI. The officer stated the opinion after giving an extensive outline of his years of DUI training and experience and his observations of Karafiat. Under these circumstances, the officer's opinion did not impermissibly invade the jury's province.[6] Thus, trial counsel did not err by not objecting to the testimony.[7]

(b) Karafiat argues that her trial counsel erred by neither objecting to nor reserving opportunity to contest a jury instruction on serious injury by vehicle that she claims expanded the indictment on the issue of bodily disfigurement. OCGA § 40-6-394 pertinently provides that

> [w]hoever, without malice, shall cause bodily harm to another . . . by seriously disfiguring his body or a member thereof . . . through the violation of Code Section 40-6-390 [(reckless driving)] or 40-6-391 [(driving under the influence of alcohol, drugs, or other intoxicating substances)] shall be guilty of the crime of serious injury by vehicle.[8]

Karafiat complains that the indictment alleged disfiguring injuries to Baxley's "body," while the jury instruction defining the offense listed as an element disfigurement to the victim's "body or a member thereof." Karafiat claims that she "was not given notice in the

---

[3] See Division 2, supra.

[4] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[5] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnotes omitted).

[6] *Lanning v. State*, 261 Ga. App. 480, 482-483 (3) (583 SE2d 160) (2003); *Chance v. State*, 193 Ga. App. 242 (1) (387 SE2d 437) (1989).

[7] See *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001) (failure to make meritless objection is not evidence of ineffective assistance).

[8] See *Harris v. State*, 272 Ga. App. 366, 369 (2) (612 SE2d 557) (2005).

indictment to defend against an allegation that she [had] caused bodily harm by seriously disfiguring a 'member' of the victim's body" and that the trial court failed to place any limitation upon the cited instruction.

We reject Karafiat's claim that the cited jury instruction required her to defend against an allegation of which the indictment had not provided her with notice.[9] Moreover, viewing the final charge as a whole, we find no reasonable probability that the cited language confused or misled the jury. In its final charge, the trial court informed the jurors that the indictment formed the issue to be tried and read the indictment to them. The indictment set forth as Count 1 the charge of serious injury by vehicle, and the trial court told the jurors that they were authorized to find Karafiat guilty of serious injury if they believed beyond a reasonable doubt that she had committed serious injury by vehicle "as alleged in Count 1." After giving the final charge, the trial court sent the indictment out with the jurors. Under these circumstances, Karafiat has failed to demonstrate that counsel erred as alleged.[10]

(c) Karafiat argues that her trial counsel should have objected to the following cross-examination of her character witness by the prosecutor:

Q: Let me ask you a hypothetical: If you were going to have surgery, how many drinks would be permissible for your surgeon to have before he went in to operate on you?
A: Zero.
Q: Because even one or two drinks might make that surgeon unsafe, correct?
A: It could.
Q: How about an airplane pilot. Let's say that you were going to take an airplane trip and you start to get on the Delta airplane. . . . [I]f you smelled alcohol on the pilot's breath, would you have some concern about his ability to fly an airplane?
A: Yes.

---

[9] See generally *Mitchell v. State*, 238 Ga. 167, 168 (231 SE2d 773) (1977) ("accepted definition of bodily 'member' is 'bodily part or organ' ").

[10] See *Robinson v. State*, 268 Ga. 175, 176 (2) (486 SE2d 156) (1997); *Ferrell v. State*, 283 Ga. App. 471, 476 (3) (641 SE2d 658) (2007); see further *Fults*, supra; see generally *Pecina v. State*, 274 Ga. 416, 417-420 (1), (2), (3) (554 SE2d 167) (2001) (explaining "seriously disfiguring his body" language contained in the serious injury by vehicle statute and further specifying evidence sufficient to support conviction thereunder).

Karafiat complains that these hypothetical questions were improper as not based upon reliable or admissible evidence.[11] But given the evidence against her, we find no reasonable probability that the outcome of her trial would have been different had her trial counsel objected to this line of questioning.[12]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 4, 2008 —

*H. Maddox Kilgore*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Amelia G. Pray, Assistant District Attorneys*, for appellee.

---

[11] See *Medlock v. State*, 263 Ga. 246, 247-248 (2) (430 SE2d 754) (1993) (questions to character witness must be in good faith and based on reliable information that can be supported by admissible evidence).

[12] See *Espinosa*, supra (a court addressing the ineffective assistance issue is not required to approach the inquiry in any particular order or even to address both the deficient performance and the prejudice components if the defendant has made an insufficient showing on one).