S09A0566. HARDNETT v. THE STATE.

(678 SE2d 323)

SEARS, Chief Justice.

The appellant, Larry Hardnett, appeals from his conviction for malice murder and other crimes stemming from the shooting death of Marty Haynes.[1] On appeal, Hardnett contends, among other

---

[1] The crimes occurred on December 2, 2000. On May 31, 2002, Hardnett was indicted for

things, that the trial court erred in admitting evidence of crimes he committed after the shooting of the victim and evidence he sold crack cocaine from his apartment. Finding no merit to Hardnett's contentions, we affirm.

1. The evidence shows that on December 2, 2000, Haynes was found dead on the side of a secluded road from numerous gunshot wounds. At that time, Haynes was living with a friend, Joseph Manville, in an apartment complex. Hardnett lived in the same complex. Manville testified that he, Hardnett, and Haynes would get together to drink beer and smoke marijuana and crack cocaine. According to Manville, Hardnett came by Manville's apartment several times before Haynes's death, and he was upset with Haynes because Haynes owed him money for drugs. Hardnett stated he was going to "mess Marty up." Hardnett told Manville to tell Haynes to get in touch with Hardnett about the money.

Shanda Roberts testified that she met Hardnett in June 2000. Roberts loaned Hardnett her gun, a .38 caliber Smith and Wesson, as collateral for a loan. She also loaned him her car, a red 1993 Honda Civic. She never received her gun or her car back from Hardnett. She added that, on December 3, 2000, Hardnett told her not to come around his apartment, as there were "cops all over it" and "a lot of trouble there." Tia Scott, who was good friends with Roberts, testified to the same events as Roberts.

Chudi Williams testified she had known Hardnett for five years and had lived with him for about two years. Williams frequently saw Haynes at the apartment she shared with Hardnett and frequently saw Hardnett and Haynes speaking with each other. On the night of December 2, 2000, Williams, Hardnett, and Monique Reese were leaving the apartment complex when they saw Haynes. They were driving the red Honda that belonged to Roberts. Haynes asked Hardnett if he would drop Haynes off at a club, and Haynes got in the car. Williams added that Hardnett drove the car to an isolated

malice murder, two counts of felony murder, aggravated assault, the possession of a firearm by a convicted felon, and the possession of a firearm during the commission of a felony. On June 24, 2002, a jury found Hardnett guilty on all charges, and on July 18, 2002, the trial court sentenced Hardnett to life in prison without the possibility of parole for malice murder and to five consecutive years in prison for both possession offenses. The felony murder convictions were vacated as a matter of law, and the court merged the aggravated assault conviction with the malice murder conviction. On August 10, 2005, the trial court granted Hardnett an out-of-time appeal, and on September 8, 2005, Hardnett filed a motion for new trial. On February 20, 2008, Hardnett filed an amended motion for new trial. On March 6, 2008, the trial court amended Hardnett's sentence for the malice murder conviction to life in prison with the possibility of parole. On October 17, 2008, the trial court denied Hardnett's motion for new trial, as amended, and on October 23, 2008, Hardnett filed a notice of appeal. The appeal was docketed in this Court on December 23, 2008, and was subsequently submitted for decision on the parties' briefs.

area, pretended something was wrong with the car, opened the hood, and asked Haynes to help him. The next thing Williams heard was gunshots, and she saw Hardnett shooting at Haynes. Williams stated that Hardnett reloaded the gun and shot Haynes some more. Hardnett, Williams, and Reese then drove off. They stopped at another part of town to visit a friend, and, when Hardnett saw some people walking nearby, he started shooting at them. Hardnett, Williams, and Reese then jumped into the car and drove back to Hardnett's apartment. Williams also testified that, after Hardnett shot Haynes, he pointed the gun at her and Reese and threatened to shoot them, and that Hardnett had used cocaine that night and drunk some beer. According to Williams, in the early morning hours of December 4, a police officer came to Hardnett's apartment based on an alleged noise complaint, and asked Hardnett for his identification. After the officer left, Hardnett, Reese, and Williams left the apartment and went to a hotel. Although she did not specify the date on which it occurred, Williams testified that, after they went to the hotel, they were out driving, and the police tried to stop the car. Hardnett, who was driving the car, drove off, and the police engaged them in a high-speed chase. Hardnett managed to get away, and they abandoned the car and went to a different hotel. Once there, Hardnett robbed a hotel guest to get his car, a Chevrolet Impala, and in the process, he shot the guest. Hardnett first drove to Tennessee and then to Birmingham, Alabama, where he left Williams at a bus station. After Williams went to live with her family in California, Hardnett wrote her a letter threatening her if she testified against him.

Reese testified that she began living with Hardnett and Williams in Hardnett's apartment in October 2000. Reese knew Haynes and Manville and said they all got together on occasion to smoke crack cocaine. Reese recounted essentially the same events as Williams regarding Hardnett's shooting of Haynes. She also testified about the high-speed chase on December 9, the shooting at the hotel, and the theft of the Impala. After leaving Williams in Birmingham, Reese and Hardnett drove to Arizona in the stolen Impala. Reese testified that Hardnett got rid of the Impala in Arizona when he stole a Suburban. Reese and Hardnett then drove to Texas where they stopped to beg for money at a gas station on January 31, 2001. Police officers arrived at the gas station and questioned Hardnett about his activities, which resulted in another high-speed chase. Texas officers were successful in stopping Hardnett's escape and arrested him for violations of Texas law.

A City of Atlanta police officer testified that on December 9, 2000, he participated in a high-speed chase of a 1993 red Honda Civic based on the call he received from another officer requesting

assistance in pursuing the vehicle. The officer stated that about eight to ten police cars were involved in the chase, but that the suspect eluded them. The officer, however, found the car several days later on December 13 in a parking deck at a restaurant.

An employee of the hotel that Hardnett went to after the December 9 high-speed chase testified that Hardnett and Williams checked into the hotel on December 9, 2000, and that Hardnett told him he had been in a wreck on the interstate. The employee added that a hotel guest was shot a short time after Hardnett checked in.

On January 31, 2001, a highway patrol officer in Texas responded to a call of some people begging for money at a gas station. The officer testified that the person driving the vehicle, a 2000 Suburban, was Hardnett, and that Hardnett told him he had lost his wallet and did not have photo identification. Hardnett told the officer his name was Orville Anderson and he was from South Carolina. The license plate on the vehicle came back as having no record, prompting the officer to run the car's VIN. As the officer was running the VIN, Hardnett got in the Suburban and sped away. At that time, the officer discovered the car had been stolen in Arizona. After a high-speed chase, Texas officers were able to stop Hardnett's vehicle and arrest him. In April 2001, Hardnett was returned to Georgia.

Forensic evidence established that bullets recovered from the victim were .38 caliber bullets and thus came from the type of revolver that Roberts had loaned Hardnett before the crimes.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Hardnett guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Hardnett contends the trial court erred in permitting evidence of the crimes committed by Hardnett following the shooting of Haynes. We disagree. Because the crimes were relevant to show Hardnett's attempt to obtain money and vehicles to flee following his shooting of the victim, we conclude the trial court did not err in admitting the evidence in question.[3]

3. Contrary to Hardnett's contention, the trial court did not err in admitting evidence he sold drugs to the victim and had threatened

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Beasley v. State*, 269 Ga. 620, 621-623 (502 SE2d 235) (1998) (evidence properly admitted that showed that, after defendant committed crime for which he was on trial, he drove to different city in Georgia, kidnapped another victim, stole his truck, drove to Florida, and was arrested sometime later after return to Georgia); *Ingram v. State*, 253 Ga. 622, 633-634 (323 SE2d 801) (1984) (evidence of crimes committed in California, Colorado, and Nebraska over course of a month after crime for which defendant was tried admissible to show flight).

him because the victim owed him money for a drug transaction.[4]

4. Hardnett contends the trial court erred in failing to dismiss two biased jurors for cause. Hardnett, however, is procedurally barred from raising the issue, as he did not move to strike either juror at trial.[5]

5. Hardnett contends the trial court erred by permitting the State to argue in closing that Hardnett made "throat-slashing" gestures to the jury. Although Hardnett contends there is no evidence in the record he made such a gesture, the trial court, in response to Hardnett's motion for mistrial, stated that "certainly [Hardnett] was making that sort of motion in the courtroom to the jurors." Because a prosecutor may comment on a defendant's courtroom demeanor in his closing argument, the trial court did not err in denying Hardnett's objection and in denying his motion for mistrial.[6]

6. Hardnett contends the trial court erred in admitting evidence of the high-speed chase on December 9, as the State did not show that the police had a reasonable suspicion on which to attempt to stop Hardnett's moving vehicle that day. Although Hardnett was a "person of interest" on December 9, it appears that Hardnett is correct that there was not sufficient reasonable suspicion to stop his car on that day for the shooting of Haynes or any other crime. At the motion for new trial hearing, testimony showed that the lead homicide investigator had asked some police officers to stake out a meeting between Hardnett and Gabriel Happle. The homicide investigator believed Hardnett was a suspect and had interviewed Happle because Happle lived in the same apartment complex as Hardnett and the victim. Happle apparently owed Hardnett money and had arranged a meeting to pay him, and the police agreed to stake out the meeting. After the apparent exchange of money, the officers who were staking out the exchange attempted to stop Hardnett's vehicle by flashing their blue lights, prompting Hardnett to speed away.

Although Hardnett may be correct that there was no reasonable suspicion to attempt to stop his car, he cannot prevail on his contention that evidence regarding the chase should therefore have been excluded. Once the officer signaled Hardnett to stop his vehicle, and Hardnett sped away, Hardnett was committing the crime of fleeing or attempting to elude a police officer, and that crime

---

[4] *Holcomb v. State*, 268 Ga. 100, 104 (485 SE2d 192) (1997); *Johnson v. State*, 260 Ga. 457, 458 (396 SE2d 888) (1990).

[5] *Phillips v. State*, 275 Ga. 595, 596 (571 SE2d 361) (2002); *Ashford v. State*, 271 Ga. 148, 149 (518 SE2d 420) (1999).

[6] *Smith v. State*, 284 Ga. 599, 603 (669 SE2d 98) (2008).

provided a legitimate basis for the police pursuit of Hardnett.[7]

7. Hardnett raises numerous allegations of ineffective assistance of trial counsel. To prevail on this claim, Hardnett has the burden to demonstrate that trial counsel's performance at trial was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[8] Moreover, "a court may bypass the question whether counsel's performance was deficient if it can 'dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.' "[9]

Hardnett contends that, if trial counsel did not properly object to the evidence of the crimes he committed after he shot and killed the victim, trial counsel was ineffective in failing to do so. Trial counsel, however, did object to this evidence, and the evidence, as we have held above, was properly admitted by the trial court. This allegation of ineffectiveness is therefore without merit. As for Hardnett's contentions that counsel was ineffective in failing to adequately prepare for trial and in failing to object to a witness's testimony about Hardnett's mistreatment of her, we conclude that Hardnett has failed to carry his burden to show prejudice based on these allegations.

Hardnett also contends that trial counsel provided deficient performance in failing to move the trial court to strike two jurors for cause. Although the potential jurors expressed concern that certain factors would impact their ability to be fair and impartial, they both stated they would try to decide the case based upon the evidence and the court's instructions. Neither potential juror expressed a fixed and definite opinion as to Hardnett's guilt. Because a decision on juror bias lies within the sound discretion of the trial court and is based on the court's evaluation of a potential juror's demeanor and credibility, and because a potential juror's removal is not required when she expresses doubt about her impartiality or states that she will "try" to decide the case based on the evidence and the court's instructions, Hardnett "cannot show how [he] was prejudiced by trial counsel's failure to move to strike [the potential jurors] for cause."[10] Moreover, to the extent Hardnett contends trial counsel was ineffective in failing to use a peremptory strike against the jurors, we find no merit to the contention. The use of peremptory strikes is a matter of trial strategy, and Hardnett has failed to carry

---

[7] *Prather v. State*, 279 Ga. App. 873, 875-876 (633 SE2d 46) (2006); OCGA § 40-6-395 (a).

[8] *Lupoe v. State*, 284 Ga. 576, 578 (669 SE2d 133) (2008).

[9] See *Brooks v. State*, 285 Ga. 246, 249, n. 11 (674 SE2d 871) (2009) (quoting *Strickland v. Washington*, 466 U. S. 668, 697 (104 SC 2052, 80 LE2d 674) (1984)).

[10] *Hargett v. State*, 285 Ga. 82, 85 (3) (b) (674 SE2d 261) (2009). Accord *Herring v. State*, 277 Ga. 317, 320 (588 SE2d 711) (2003).

his burden to show that counsel's use of his strikes was not reasonable.[11]

Hardnett contends trial counsel was ineffective in failing to object to the State's introduction of the prior felonies it used to support his conviction for possession of a firearm by a convicted felon and his sentencing as a recidivist under OCGA § 17-10-7 (b) for the commission of serious violent felonies.

As for the recidivist sentencing, although Hardnett was originally sentenced under OCGA § 17-10-7 (b), the State later recognized that Hardnett's prior felony convictions did not qualify as serious violent felonies under the statute, and the trial court subsequently amended the sentence so that Hardnett did not receive the recidivist sentence. Accordingly, there was no prejudice from counsel's failure to raise the issue.

As for his conviction for the possession of a firearm by a convicted felon, Hardnett contends the prior felonies the State introduced to support the offense were faxes of certified copies, were thus inadmissible, and should have been objected to by trial counsel. The record, however, shows the Georgia record was not a fax, and was admissible to prove Hardnett's prior conviction. Counsel therefore did not provide deficient performance in failing to object to it.[12] Moreover, because the Georgia record was admissible and because "it is irrelevant to a charge under OCGA § 16-11-131 (b) what felony formed the basis of the prior conviction,"[13] trial counsel did not provide deficient performance in failing to object to the California conviction even assuming it was inadmissible as not properly certified.

Hardnett also contends trial counsel was ineffective in failing to object that the guilty pleas that formed the basis of his prior convictions were not freely and voluntarily entered. A person charged with possession of a firearm by a convicted felon, however, may not collaterally attack

> the prior felony conviction that serves as the predicate offense since OCGA § 16-11-131 (b) clearly prohibits all convicted felons from possessing a firearm until they are pardoned from their felony convictions or otherwise re-

---

[11] *Hammond v. State*, 264 Ga. 879, 885 (452 SE2d 745) (1995); *Solomon v. State*, 247 Ga. 27, 30 (277 SE2d 1) (1981).

[12] Even if the Georgia record were a fax of a certified copy, trial counsel would not necessarily have been ineffective in failing to object. The case was tried in Fulton County Superior Court, and the prior conviction was from the same court. Trial counsel could have reasonably decided not to object and put the court and the jurors through a delay that ultimately would have been of no benefit to Hardnett.

[13] *Miller v. State*, 283 Ga. 412, 416 (658 SE2d 765) (2008).

lieved of the disability (OCGA § 16-11-131 (c), (d)), and no exception is made for an invalid outstanding felony conviction.[14]

Accordingly, trial counsel did not provide deficient performance in failing to make a meritless objection.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 18, 2009 —
RECONSIDERATION DENIED JUNE 8, 2009.

*Daniel B. Greenfield*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.

---

[14] *Martin v. State*, 281 Ga. 778, 780-781 (642 SE2d 837) (2007).