## A10A0801. RELAFORD v. THE STATE.
### (702 SE2d 776)

PHIPPS, Presiding Judge.

A jury found Arnold Relaford guilty of two counts of failing, as a registered sexual offender, to report an address change.[1] He appeals his convictions therefor, contesting the admission of certain evidence, the final charge to the jury, the rejection of his claim of ineffective assistance of trial counsel, and one of the sentences imposed upon him. Because Relaford has shown no reversible error, we affirm.

---

[1] See OCGA § 42-1-12 (f) (5) (any sexual offender required to register under this Code section shall update the required registration information with the sheriff of county in which offender resides within 72 hours of any change to required registration information).

One of the counts of the indictment upon which the jury returned a guilty verdict alleged that Relaford,

on or about May 19, 2006, the exact date being unknown to the grand jurors, after having previously been convicted of Rape . . . on November 14, 2000, which conviction required [him] to register as a sexual offender in the county in which he resided, did change his unregistered Chatham County residence and did fail to notify the Sheriff of Chatham County of such change within 72 hours following such change in violation of Code Section 42-1-12.

The other count upon which the jury returned a guilty verdict alleged that Relaford,

on or about April 4, 2007, the exact date being unknown to the grand jurors, after having previously been convicted of Rape . . . on November 14, 2000, which conviction required [him] to register as a sexual offender in the county in which he resided, did change his Chatham County residence from 2355 Ogeechee Road, Savannah, Chatham County, Georgia and did fail to notify the Sheriff of Chatham County of such change within 72 hours following such change in violation of Code Section 42-1-12.

At trial, the state presented evidence that Relaford was convicted of forcible rape in Fulton County on November 14, 2000. In February 2001, having been released on probation, he was notified that he was required to register as a sexual offender under OCGA § 42-1-12. Thereafter, Relaford provided required registration information to the Chatham County Sheriff's Department three times — on February 3, 2003, February 14, 2007, and March 9, 2007. The first two times, Relaford provided the Savannah, Chatham County residential address: "2355 Ogeechee Rd," property owned by his father and occupied by Relaford's parents. The last time, he reported a change in employment and left blank that section reserved for a "change of primary residence."

The state called Relaford's father as a witness. He acknowledged that he had warned his son that, unless he respected his rules, he could not live at the Ogeechee Road residence. Relaford's father testified that his son had respected his rules and therefore had continued to live with them at that address. Then the prosecutor pressed Relaford's father regarding whether he had made inconsistent statements to law enforcement officers who had come to his residence one day in December 2007 to verify that Relaford was still

living there. Relaford's father testified that he told the officers that day that his son was living there with him and his wife; Relaford's father further denied at trial that his son had not lived at his residence since April or May 2007 and that he had told those officers that his son had not lived at his residence since that time. Relaford's father conceded, however, that he told the officers that day that "[his son] does come by to eat occasionally."

Consequently, the state called several witnesses and elicited their testimony that Relaford's father had made prior inconsistent statements.[2] The officers who had visited Relaford's father in December 2007 were assigned to the SORT (sex offender registration and tracking) unit of the Chatham County Sheriff's Department. Their purpose for visiting was to verify information Relaford had registered, as they explained to Relaford's father. When the prosecutor asked one of the officers about Relaford's father's response to questions regarding whether his son lived there, that officer testified that Relaford's father told him that his son had moved away in April or May 2007. Further, that officer recalled, "He told me that his son occasionally would stop by to eat but he would not allow him to stay there because he wouldn't respect his lifestyle and wouldn't follow the rules and that he had made his decision to roam the streets." The other SORT officer similarly recalled Relaford's father's response: "He said that he would occasionally come by and he'd feed him but that's the only reason for comin[g] by and he wouldn't allow him to stay there because he wouldn't abide by his rules and he wouldn't respect his lifestyle."

The state also called as a witness a probation officer who had supervised Relaford starting in March 2007. She testified that when she met with Relaford for the first time on March 9, he gave as his residential address: 2355 Ogeechee Road, Savannah; she instructed Relaford that he was required to report to her specific information, including address changes; and when she told him that he had a duty to register certain information as a sexual offender, Relaford retorted that he should not have to "register for a crime he's already done the time on." Thereafter, despite his probationary requirement to report to her as his probation officer, he did not; for many months, she did not know where he was. In November 2007, she went to the residential address he had provided to her at their initial meeting to verify whether he had ever lived there. She met Relaford's father. At

---

[2] "[A] prior inconsistent statement [is] admissible for both substantive and impeachment purposes." *Thorpe v. State*, 285 Ga. 604, 612 (8) (678 SE2d 913) (2009). And the jury in this case was so instructed.

trial, she described the father's response to her inquiry:

> He told me that the defendant did not live there but he did come there off and on. Some nights he would come there to eat and that was because the mother wanted him basically to feed the defendant. And that he was not allowed to live there because he would not abide by his rules in his house so he couldn't stay there.

In addition, a police officer with the Savannah-Chatham Metropolitan Police Department testified that he had an encounter with Relaford on April 14, 2007, and that Relaford stated that he was homeless.

To show that even before 2007, Relaford had not been living at his father's residence, the state called another of his probation officers, one who had supervised Relaford for about two years beginning on September 8, 2005. She testified that Relaford was required to keep her apprised of his residential address. At their initial meeting on September 8, Relaford gave her a homeless shelter as his address. But in October 2006, the probation officer became aware that Relaford was in Louisiana. The following month, Relaford was "extradited back to Georgia from Louisiana through the sheriff's department."

Relaford took the stand and testified that he moved back to Chatham County in 2003 and thereafter "never changed [his] address nor moved out of [his] daddy and mama house." When asked on direct examination to explain "what was going on with [him] in May of 2006" (the date set forth in one of the charged offenses), Relaford answered that he had gone to New Orleans to see his family who lived there and to see the aftermath of Hurricane Katrina. Admitting that he had "dabbled in drugs," Relaford elaborated that while in New Orleans, he was arrested; during the ensuing search of one of his pockets, an officer discovered a crack pipe; and he was jailed from May 15, 2006 through July 20, 2006. Although Relaford acknowledged that he did not leave New Orleans until he was extradited back to Georgia in November 2006, he maintained that he had no intent to move to New Orleans and was merely visiting family.

When asked on direct examination whether he had committed the other offense (which count alleged a later date), Relaford reiterated, "I have never changed my address or moved out of my daddy or my mama house." He described their time together, claiming that "[w]e have a good time," and that "I respect my father." He added, however, that his parents were almost 80 years old, that his father was a minister, and that their lifestyles conflicted.

He continued, "I can't bring a girl over, I can't use drugs there, I can't do anything like that." Given that he was "a young man still," Relaford elaborated, "I go out and I wanna party with a female sometime or do drugs." Relaford asserted that, when he would "go out" or when he was "on one of [his] crack binges," his absences were misconstrued as his having moved out of his mother and father's residence.

Given Relaford's claim of having continuously lived for several years in his parents' home and, while doing so, respecting his father's rules, the prosecutor asked Relaford whether his father had ever kicked him out the house. Relaford answered no. Thereupon, the prosecutor introduced a certified copy of Relaford's July 2005 conviction for offenses committed on June 13, 2004, including: (i) burglary, by entering his parents' dwelling house located at 2355 Ogeechee Road; (ii) robbery, by using force to take car keys from his 72-year-old mother; (iii) theft by taking his mother's automobile; and (iv) simple battery, by making physical contact of an insulting or provoking nature or causing physical harm to his mother. Eliciting Relaford's admission that he had pled guilty to each of the charges and further pointing out to Relaford that the burglary charge had alleged and required an *unlawful* entry, the prosecutor asked Relaford again whether his father had ever kicked him out of the house. Relaford answered no, maintaining that his relationship with his parents had never been on such bad terms that his father had kicked him out of the house.

1. Relaford contends that the trial court erred by admitting a copy of his convictions for the offenses of burglary, robbery, theft by taking, and simple battery. But as he concedes, his trial counsel's failure to object to the admission of this evidence waived the issue.[3]

2. Relaford contends that the trial court erred in giving the final charge to the jury.

(a) He argues that the court erred by instructing that a defendant's credibility may be impeached by proof of a prior conviction. But when the court asked for objections to the final charge, Relaford's counsel stated that the defense had none, thereby failing to preserve this issue for appellate review.[4]

(b) Relaford also contends that the trial court erred by rejecting his written request to charge on bare suspicion. But Relaford's trial counsel argued at the charge conference only that the instruction was pertinent to a third charged offense, upon which the jury ultimately returned a not guilty verdict. Moreover, as stated above,

---

[3] See *Furlow v. State*, 272 Ga. 795, 796 (2) (537 SE2d 61) (2000).
[4] See *Karafiat v. State*, 290 Ga. App. 15, 17 (2) (658 SE2d 801) (2008).

defense counsel did not object to the final charge, thereby waiving the issue.[5] Nevertheless,

> [o]ur review of the transcript shows that the trial court gave accurate and complete instructions to the jury on the presumption of innocence and reasonable doubt. Under these circumstances we have held that the trial court did not err by refusing to give a requested charge on bare suspicion.[6]

3. Relaford contends that the trial court erred by rejecting his claim of ineffective assistance of counsel.

To prevail on an ineffectiveness claim, a defendant must establish, pursuant to *Strickland v. Washington*,[7] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[8] Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact.[9] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo.[10]

(a) Relaford complains that his trial counsel did not object to the admission of his prior convictions for burglarizing his parents' home, theft by taking his mother's car keys, robbing her of her automobile, and committing battery against her. The evidence was admissible, however, to impeach Relaford's credibility, given his testimony on direct examination that he had lived for years with his parents in their home, without any period of disruption, respecting his father, abiding by his father's rules while there, and accordingly, never having been kicked out of his mother and father's residence.[11]

---

[5] See id.

[6] *Hafez v. State*, 290 Ga. App. 800, 802 (3) (a) (660 SE2d 787) (2008) (citations omitted).

[7] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[8] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[9] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000).

[10] Id. at 88 (4).

[11] *Arrington v. State*, 286 Ga. 335, 348 (17) (687 SE2d 438) (2009) (recognizing principle that when a criminal defendant testifies in his own behalf and falsely denies past criminal conduct or misdeeds, the state may introduce evidence of a prior conviction to prove the falsity of specific testimony of the defendant; and such evidence constitutes impeachment evidence); *Lindsey v. State*, 282 Ga. 447, 449-450 (2) (651 SE2d 66) (2007) (same); *Porter v. State*, 254 Ga. 388, 389 (2) (330 SE2d 94) (1985) (where proof that the defendant had previously assaulted another with a knife was intended to show the falsity of defendant's testimony that he had never shot anybody or done "anything like that before," state was entitled to impeach the defendant's broad statement by introducing defendant's prior conviction of aggravated assault with a knife).

(b) Relaford asserts that his trial lawyer should have objected to instructions given in the final charge regarding the use of his prior convictions. Review of the entire charge, however, reveals that the trial court adequately informed the jury of applicable legal principles with respect to Relaford's prior convictions.[12]

(c) Relaford asserts that his trial counsel failed to apprise him of the strength of the state's case — in particular, that the state was anticipating using his own father's statements against him. Relaford contends that, had he known about such a tactic, he would have accepted a plea deal offered by the state.

At the hearing on the motion for new trial, Relaford's trial lawyer testified that, before trial, the state provided him with its discovery file; that both Relaford and his father had informed him that Relaford's father would testify that Relaford had never moved out of his parents' home; and that he (the lawyer) had specifically discussed with Relaford that the state would then use his father's prior inconsistent statement as substantive evidence against him. Although Relaford testified at the hearing that he was not fully aware of that anticipated strategy, the trial court was authorized to disbelieve Relaford's testimony and accept instead his trial counsel's account.[13]

(d) Relaford argues that his trial counsel erred by introducing in evidence unredacted case notes of the probation officer who had gone to his father's residence looking for him in November 2007.

Defense counsel introduced this document in an apparent attempt to impeach that witness's credibility, by showing a discrepancy between her records and those of the sheriff's department. First, the lawyer obtained the probation officer's acknowledgment that it was her handwriting on the document at issue stating that Relaford had "[n]ever ever registered after instructed on 3-9-07." Then, the lawyer asked the probation officer, "And so your testimony is he was not registered with the sheriff at that point in time?" She answered, "From my knowledge on 3/9/07 he wasn't." Then the lawyer showed that, contradicting her knowledge as of that time, Chatham County Sheriff's Department records revealed that Relaford had reported to that department required registration information on February 14, 2007 and on March 9, 2007.

---

[12] See *Roker v. State*, 262 Ga. 220, 222 (4) (416 SE2d 281) (1992) (noting "fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error"); see generally *Clay v. State*, 238 Ga. 285, 286 (3) (232 SE2d 559) (1977).

[13] *Horne v. State*, 273 Ga. App. 132-133 (1) (614 SE2d 243) (2005) (when considering claims of ineffectiveness of counsel, the trial court determines witness credibility and is not required to accept the defendant's version of events).

Notwithstanding the impeachment effort, Relaford complains that elsewhere on the document was typed information that he had been "reassessed as a high," which was immediately followed by "+1 drug usage, +1 employment, +2 compliance with conditions =23/high"; he also complains that other typed information on the document stated that probationer supervision fees had been waived at "a revocation hearing."

Notably, the majority of the complained-of language was cryptic; and, at trial, neither defense counsel nor the prosecutor delved into any of the language about which Relaford now complains. Moreover, while Relaford complains that the document referenced "drug usage," Relaford himself told the jurors that he "dabbled in drugs," enjoyed going on "crack binges," and had been caught by law enforcement with a crack pipe. And Relaford has made no attempt to explain his complaint about the notations to "employment," "compliance with conditions," or "=23/high." Relaford complains that the document referred to probation supervision fees, but substantial evidence revealed that Relaford had been supervised by probation officers. Finally, given other evidence that Relaford had been *convicted* of felonious crimes since his rape conviction, we reject Relaford's assertion that the remaining cited reference — "a revocation hearing" — was so prejudicial that failure to redact it from the impeaching document amounted to professional error.[14]

(e) Relaford complains that his trial counsel did not object to remarks made by the prosecutor during closing argument. In particular, the prosecutor stated that some of his own adult son's clothes could be found at his (the prosecutor's) house, notwithstanding that his son had gone to college, married, and was then working in Texas. Relaford asserts that these remarks were prejudicial and argued facts not in evidence.

The record indicates that this segment of argument was in response to specific evidence elicited by and argument presented by the defense. Relaford's father had testified that Relaford still had clothes at his residence. One of the SORT officers admitted that, when he and the other officers went to Relaford's father's residence, they had made no attempt to look inside the home for any evidence indicating whether Relaford was living there. And Relaford's lawyer had asserted during closing argument that all of Relaford's "stuff" was still at his father's residence.

Both the prosecution and the defense are permitted wide lati-

---

[14] See generally *Hancock v. State*, 277 Ga. 835, 839 (5) (596 SE2d 127) (2004) (recognizing that purportedly improper character evidence may be deemed harmless where it was cumulative of other evidence before the jury).

tude in their closing arguments.[15] When Relaford's trial lawyer was asked at the new trial hearing why he had not objected to the cited remarks by the prosecutor, he answered that, as a matter of trial tactics, he does not object to "every single thing objectionable."

Indeed, not objecting to every improper statement made by the prosecutor during closing argument is often a sound tactic.[16] In this case, even if the prosecutor's fleeting remarks exceeded the proper bounds of appropriate argument, Relaford has not demonstrated that the failure to object was outside the wide range of professionally competent assistance and therefore fell below an objective standard of reasonableness.[17]

(f) There is no merit in Relaford's contention that his trial lawyer should have lodged a continuing witness objection to prevent a copy of his convictions of the crimes related to his mother and father from going out with the jury.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations. These documents, which generally contain their makers' assertions of purported truths, are ascribed evidentiary value only to the extent that their makers are credible.[18]

The certified copy of the judgment of conviction admitted for impeachment purposes was not the sort of document excluded under that rule of law.[19]

(g) Relaford asserts that his trial counsel should have collater-

---

[15] See *Smith v. State*, 284 Ga. 599, 602 (2) (a) (669 SE2d 98) (2008); see *Head v. State*, 276 Ga. 131, 135 (6) (575 SE2d 883) (2003) ("Counsel's illustrations during closing argument may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination.").

[16] *Smith*, supra.

[17] See id.

[18] *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009) (citations and punctuation omitted).

[19] *Johnson v. Ray*, 206 Ga. App. 262, 264 (4) (424 SE2d 892) (1992); see *Davis*, supra, and cits. therein (concluding that the following documents fell outside the continuing witness rule: a death certificate showing fact of death, letters that were not written testimony, and a photo lineup).

ally attacked his underlying rape conviction "by way of habeas corpus, or a pretrial motion, or an objection at trial."

Relaford points out that his rape charge stemmed from a 1988 incident, that he entered a guilty plea thereupon in 1989, and that the Superior Court of Fulton County placed him on five years probation pursuant to the provisions of the First Offender Act.[20] Among probationary conditions imposed, Relaford was required to report to a probation officer as directed and to pay a fine. In 1989, a warrant issued for Relaford's arrest for, among other things, failing to report to his probation officer. Relaford was not arrested on that warrant, however, until November 2000. After a probation revocation hearing that same month, at which Relaford was represented by counsel, Relaford's probation was revoked; an adjudication of guilt was entered; and Relaford was given a sentence of three years and six months, to serve four months in confinement.

In this appeal, Relaford argues that he never should have been required to register as a sexual offender. He claims that, taking into consideration the amount of time he asserts he was jailed prior to pleading guilty, he was entitled to an automatic discharge in 1993 — years before he was arrested on the probation violation warrant, his first offender probation was revoked, and he was adjudicated guilty and convicted.

Relaford proposes, in this appeal, to charge the lawyer who represented him at the 2000 probation revocation hearing with ineffective assistance of counsel, asserting that "there [were] several arguments by which [that lawyer] could have barred Mr. Relaford from having his First Offender status revoked and being resentenced on his Fulton County probation." In turn, he charges that the lawyer who represented him in the instant case should have challenged the rape conviction by "alleging that [the lawyer who represented him at the probation revocation hearing] rendered ineffective assistance of counsel."

Relaford cites no authority supporting his argument that he has set forth a cognizable claim of ineffective assistance of trial counsel in the instant case. And we find none. Moreover, we are guided by that line of cases represented by *Hardnett v. State*.[21] In *Hardnett*, the appellant asserted an ineffectiveness claim to collaterally attack the felony conviction underlying his conviction for possession of a firearm by a convicted felon.[22] Specifically, the appellant contended that his trial counsel had been ineffective in failing to object that the

---

[20] OCGA § 42-8-60 et seq.

[21] 285 Ga. 470 (678 SE2d 323) (2009).

[22] Id. at 476 (7).

guilty pleas that formed the basis of his prior convictions were not freely and voluntarily entered.[23] The Supreme Court of Georgia rejected that contention, citing *Martin v. State*[24] and explaining:

> A person charged with possession of a firearm by a convicted felon, however, may not collaterally attack the prior felony conviction that serves as the predicate offense since OCGA § 16-11-131 (b) clearly prohibits all convicted felons from possessing a firearm until they are pardoned from their felony convictions or otherwise relieved of the disability, and no exception is made for an invalid outstanding felony conviction. Accordingly, trial counsel did not provide deficient performance in failing to make a meritless objection.[25]

In the instant case, Relaford was convicted of two counts of violating OCGA § 42-1-12 (for twice changing his residence without notifying the sheriff). That Code section provides that any individual who "[i]s required to register under this Code section and who fails to comply with the requirements of this Code section . . . shall be guilty of a felony."[26] Registration under OCGA § 42-1-12 is required by, among others, "any individual who . . . [is] convicted on or after July 1, 1996, of a dangerous sexual offense."[27] OCGA § 42-1-12 defines "dangerous sexual offense," with respect to convictions occurring on or before June 30, 2006, as including forcible rape.[28] OCGA § 42-1-12 defines "conviction" as including "a final judgment of conviction entered upon a verdict or finding of guilty of a crime, a plea of guilty, or a plea of nolo contendere."[29] No exception is made for a conviction that stood as of the date(s) alleged in the indictment, but which conviction is later shown to have been invalid.[30] Relaford's argument, based upon an exception that does

---

[23] Id.

[24] 281 Ga. 778, 780-781 (3) (a) (642 SE2d 837) (2007) (one charged with possession of a firearm by a convicted felon may not mount a successful collateral attack on the prior felony conviction that serves as the predicate offense since OCGA § 16-11-131 (b) clearly prohibits all convicted felons from possessing a firearm until they are pardoned from their felony convictions or otherwise relieved of the disability, and no exception is made for an invalid outstanding felony conviction).

[25] *Hardnett*, supra at 476-477 (citation and footnote omitted).

[26] OCGA § 42-1-12 (n).

[27] OCGA § 42-1-12 (e) (2).

[28] OCGA § 42-1-12 (a) (10) (A) ("rape in violation of Code Section 16-6-1").

[29] OCGA § 42-1-12 (a) (8).

[30] See generally *Lewis v. United States*, 445 U. S. 55, 62 (100 SC 915, 63 LE2d 198) (1980) (cited in *Martin*, supra at 780-781). But see generally OCGA § 42-1-12 (g) (providing that a sexual offender required to register under this Code section may petition to be "released" from

not exist, is meritless. It follows that Relaford's trial counsel did not provide deficient performance by failing to collaterally challenge the underlying rape conviction in defense of the charges that gave rise to this appeal.[31]

Relaford's reliance upon *Jackson v. State*[32] is misplaced because that case is procedurally and factually inapposite. Procedurally, it concerned an appeal from the denial of a void sentence; factually, there was no showing of any "conviction" within the purview of OCGA § 42-1-12.[33]

4. Relaford contends that the trial court erred by sentencing him to 30 years, to serve 15 imprisoned, on the count that alleged a violation of OCGA § 42-1-12 "on or about April 4, 2007, the exact date being unknown to the grand jurors." He asserts that the sentencing range for that offense was one to three years.

Relaford acknowledges that, by an amendment to OCGA § 42-1-12 that was effective July 1, 2006, the sentencing range was increased from one to three years to ten to thirty years.[34] However, he cites cases such as *Denson v. State of Ga.*[35] for the proposition that "[t]he ex post facto clause of the Georgia Constitution prohibits the infliction of a greater punishment than was permitted by the law in effect at the time of the commission of the offense"[36] and argues that the following language included in the final charge authorized the jury to find that he committed that offense prior to July 1, 2006:

> [I]f after considering the testimony and evidence presented to you together with other instructions of the Court you should find beyond a reasonable doubt that the defendant committed the offenses of failure of a registered sex offender to report an address change . . . as alleged in the indictment within Chatham County during the statute of limitations, you could find the defendant guilty.

---

registration requirements).

[31] See *Hardnett*, supra; *Martin*, supra.

[32] 299 Ga. App. 356 (683 SE2d 60) (2009).

[33] Id. (where defendant pleaded guilty to statutory rape, was given probation under the First Offender Act, completed his probation, and was discharged without an adjudication of guilt, defendant was not required to register as a sexual offender under OCGA § 42-1-12; thus, defendant's subsequent motion to vacate illegal sentence, imposed for failing to register as a sexual offender under that Code section, should have been granted).

[34] *Bradshaw v. State*, 284 Ga. 675, 676 (2), n. 5 (671 SE2d 485) (2008) (detailing legislative changes to sentencing provisions of OCGA § 42-1-12). Relaford was sentenced to three years to serve on the count that alleged that he violated OCGA § 42-1-12 "on or about May 19, 2006, the exact date being unknown."

[35] 267 Ga. App. 528 (600 SE2d 645) (2004).

[36] Id. at 529.

According to Relaford, this charge authorized the jury to find him guilty if it found, among other things, that he committed the offense *at any time* during the limitation period. Further, Relaford argues that the charged offense was subject to the four-year limitation period set forth in OCGA § 17-3-1 (c), and given that the indictment was returned on May 14, 2008, the jury could have found that he committed that offense as far back as May 15, 2004 — well before the sentencing amendment.

Because Relaford's argument hinges on a mischaracterization of the cited language of the jury charge, this contention is without merit.

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED OCTOBER 22, 2010 — 

*Steven L. Sparger*, for appellant.

*Larry Chisolm, District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.

