S08A1496. SMITH v. THE STATE.
S08A1581. LIGHTBURN v. THE STATE.

(669 SE2d 98)

SEARS, Chief Justice.

In 2007, a DeKalb County jury convicted Anthony Maurice Smith and Vernon Lightburn of malice murder and related crimes arising out of the shooting death of Rodney Gresham and the kidnapping of his live-in bodyguard and chef, Bosheal "Bo" Morris. Smith and Lightburn claim their trial attorneys rendered constitutionally ineffective assistance of counsel by failing to object to improper argument in the prosecutor's closing and the presence in the jury room of two sign language interpreters. Smith argues in addition that his lawyer was ineffective in failing to call a critical impeachment witness at trial. In an argument not raised by Smith, Lightburn contends that the trial court violated his constitutional right to be present at all critical stages of the proceedings against

him by excusing a juror from service after Lightburn had been taken from the courtroom due to illness. For the reasons that follow, we affirm.[1]

1. Gresham owned a start-up music business called MDC, which stands for "Million Dollar Corporation." He frequented night clubs with Morris where he would flash around large amounts of cash to project an image of success for himself and his fledgling music company. Lightburn was a friend of Gresham and a frequent visitor to his home. Smith was a friend of Gresham's brother and had visited Gresham's house only once before the incident in question.

On the morning of September 7, 2006, Lightburn paid a visit to Gresham at his house. Morris let Lightburn in, and Lightburn proceeded up the stairs to talk to Gresham. Shortly thereafter, Lightburn came back downstairs, telling Morris he needed to retrieve something from his car but that he would be right back.

When Lightburn returned, he was accompanied by three men, one of whom was Smith. One of the men put a gun in Morris's face, forced him to back up and sit down on the couch, and warned him not to alert Gresham. Morris was tied up with duct tape as Lightburn and another man headed up the stairs to confront Gresham. Lightburn demanded that Gresham tell him where "the money" was as his accomplice beat and tortured him. Lightburn threatened to kill Gresham and his entire family if he refused to cooperate.

When Smith entered the house, he put a sheet over Morris's head. He commented to Morris that "[y]our boys [sic] is getting busted open real bad." As the beating of Gresham continued, Morris heard Lightburn tell Gresham that they planned to kill everyone in the house. Fueled by fear, Morris managed to bite through the duct tape securing his hands, hop to the back staircase, and throw himself down.[2] The force of the fall loosened the duct tape around his legs, and he was able to break free.

Morris ran for the neighbors' house. His captors soon realized he was gone and gave chase, and Morris heard two gunshots ring out from Gresham's room. By the time Morris reached the neighbors'

---

[1] On May 30, 2007, a DeKalb County grand jury indicted Smith and Lightburn for the malice murder of Gresham; three counts of felony murder and the predicate felonies of armed robbery, burglary, and aggravated assault; the armed robbery, aggravated assault, and kidnapping with bodily injury of Morris; and criminal damage to property, possession of a firearm during the commission of a crime, and obstruction of a peace officer. At the conclusion of a five-day trial on June 20, 2007, the jury convicted Smith and Lightburn of all charges. The trial court sentenced each of them to two consecutive terms of life imprisonment plus an additional five years for Smith and an additional fifteen years for Lightburn. The trial court denied their motions for new trial, as amended, on March 25, 2008, and they filed timely notices of appeal. Smith's appeal was docketed in this Court on May 15, 2008, and Lightburn's appeal was docketed on June 2, 2008.

[2] It is unclear why Morris's captors were not watching him at this point.

house, the men were already firing on him. Morris kicked in the neighbors' door and threw himself inside amidst a hail of bullets. The neighbors, who were home, gave Morris a gun to return fire while frantically dialing 911. A fierce firefight ensued.

The assailants departed only when the police neared. They led police on a high-speed chase that ended when they made a wrong turn, and the police captured Lightburn and Smith as they fled from the vehicle on foot. Smith was arrested largely without incident, but Lightburn violently resisted, which resulted in his being shot in the abdomen before he could be subdued. Lightburn and Smith were indicted eight months later, and the following month, they were convicted on all charges. The trial court denied their motions for new trial, and both men filed timely notices of appeal.

Viewed in the light most favorable to the verdict, we have no difficulty concluding that the evidence presented at trial was more than sufficient to authorize a rational trier of fact to find the defendants guilty beyond a reasonable doubt of the malice murder of Gresham as well as the other crimes for which they were convicted.[3]

2. *Ineffective Assistance of Counsel.* The defendants accuse their trial attorneys of providing constitutionally ineffective assistance of counsel for failing to make additional objections during the prosecution's closing argument and failing to object to the presence in the jury room of two sign language interpreters. To prevail on this claim, the defendants must show both that their attorneys' performance at trial was professionally deficient and that but for their defective performance, there is a reasonable probability the trial would have ended more favorably to them.[4] As the trial court correctly held in rejecting their new trial motions, the defendants have demonstrated neither deficient performance nor resulting prejudice.

(a) *Additional Objections During Closing Argument.* The defendants were separately represented by experienced criminal defense attorneys who thoroughly prepared for trial and aggressively cross-examined the State's witnesses. Defense counsel objected at several points during the State's lengthy closing argument, and with some success. Nevertheless, the defendants now claim that their attorneys were professionally deficient in failing to raise more objections. Specifically, they contend their attorneys should also have objected when the prosecution: (1) improperly vouched for the truth of Morris's testimony; (2) argued defense counsel would "do anything or say anything" to secure acquittals; (3) asserted that both the

---

[3] *Jackson v. Virginia,* 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship,* 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

[4] *Strickland v. Washington,* 466 U. S. 668, 687-696 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. State,* 284 Ga. 304, 309, 310 (667 SE2d 65) (2008).

defendants and their attorneys knew that they were guilty as charged; and (4) commented on the defendants' smiling at trial and the difference between how they were dressed and groomed at trial as opposed to at the time of their arrest.

Both the prosecution and the defense are permitted wide latitude in their closing arguments.[5] As a general rule, closing argument is appropriate as long as it is based on evidence that is properly before the jury.[6] Requests to limit the scope of closing argument are addressed to the sound discretion of the trial court, and the trial court's resolution of such matters will not be reversed on appeal absent an abuse of that discretion.[7] We agree with the trial court that the defendants have failed to show that their attorneys were professionally deficient in failing to raise the additional objections.

Defense counsel were not required to object to the prosecution's improperly vouching for Morris's credibility for the simple reason that it never occurred. Read in context, it is perfectly clear that the prosecutor was arguing that the *evidence* showed that Morris's testimony was truthful, not that the prosecutor was himself vouching for Morris's credibility.

The prosecution's statement that defense counsel would "do anything or say anything" to obtain acquittals is troubling. Defense counsel would certainly have been within their rights to object, and the trial court would not have abused its discretion had it sustained the objection. Nevertheless, there are often sound tactical reasons for not objecting to every improper statement made by the prosecution during closing argument, and the defendants have not demonstrated that the failure to object to the prosecution's fleeting attack on defense counsel's integrity was "outside the wide range of professionally competent assistance" and therefore "fell below an objective standard of reasonableness."

The claim that the prosecutor asserted that the defendants' own attorneys knew they were guilty is based on a misreading of the record. Smith argues in his brief on appeal, in a section adopted verbatim by Lightburn, that the prosecution stated as follows during closing argument: "[Appellant and his counsel] know they're guilty." However, what the prosecutor actually said, at the conclusion of his rebuttal to defense counsel's closing arguments, was: "The evidence is before you. They know they're guilty. We know they're guilty. And

---

[5] *Spiller v. State*, 282 Ga. 351, 354 (647 SE2d 64) (2007); *Cooper v. State*, 281 Ga. 760, 763 (642 SE2d 817) (2007).

[6] *Williams v. State*, 279 Ga. 600, 602 (619 SE2d 649) (2005); *Morgan v. State*, 267 Ga. 203, 206 (476 SE2d 747) (1996).

[7] *Banks v. State*, 281 Ga. 678, 682 (642 SE2d 679) (2007); *Terrell v. State*, 271 Ga. 783, 787 (523 SE2d 294) (1999).

we know that you know they're guilty. You just need to tell them.'' The obvious referent of the word "They" in the second sentence is the defendants themselves, not their lawyers. Moreover, it is clear from context that, aside from the defendants themselves, the prosecutor was not implying that he or the other prosecutor or anyone else had some secret knowledge of the defendants' guilt other than that shown by the evidence presented at trial.

The defendants contend trial counsel should have objected when the prosecution commented on the defendants' courtroom dress and demeanor. This contention might have some force if this case had been tried in federal court or the courts of our many sister states that have held that such statements are objectionable where a defendant has exercised his or her constitutional right not to take the stand at trial.[8] However, this Court has held on several occasions that, generally speaking, it is not improper for the prosecutor to comment in closing argument on a non-testifying defendant's appearance and facial expressions.[9] Thus, counsel's performance was not deficient in this regard.

In any event, even if we concluded that trial counsel performed unprofessionally in failing to lodge the additional objections now urged by the defendants, the defendants' ineffective assistance of counsel claim still fails. The evidence of Smith and Lightburn's guilt was overwhelming, and they failed to demonstrate that but for the

---

[8] See *United States v. Mendoza*, 522 F3d 482, 491 (5th Cir. 2008); *United States v. Leal*, 75 F3d 219, 225-226 (6th Cir. 1996); *United States v. Gatto*, 995 F2d 449, 455 (3rd Cir. 1993); *United States v. Schuler*, 813 F2d 978, 981 (9th Cir. 1987); *United States v. Pearson*, 746 F2d 787, 796 (11th Cir. 1984); *United States v. Carroll*, 678 F2d 1208, 1209-1210 (4th Cir. 1982); *United States v. Wright*, 489 F2d 1181, 1186 (D.C. Cir. 1973); *California v. Boyette*, 58 P3d 391, 425 (Cal. 2002); *Connecticut v. John B.*, 925 A2d 1235, 1243 & n. 5 (Conn. App. Ct. 2007); *Hughes v. Delaware*, 437 A2d 559, 572 (Del. 1981); *Hyman v. United States*, 342 A2d 43, 45 (D.C. 1975); *Rodriguez v. Florida*, 609 S2d 493, 501 (Fla. 1992); *Hawai'i v. Smith*, 984 P2d 1276, 1286 (Haw. Ct. App. 1999); *Illinois v. Jenko*, 102 NE2d 783, 786 (Ill. 1952); *Bryant v. Maryland*, 741 A2d 495, 498-501 (Md. Ct. Spec. App. 1999); *Blue v. Mississippi*, 674 S2d 1184, 1213-1215 (Miss. 1996); *Missouri v. Davis*, 190 SW 297, 298 (Mo. 1916); *New Jersey v. Johnson*, 576 A2d 834, 851-852 (N.J. 1990); *Young v. Oklahoma*, 191 P3d 601, 611 (Okla. Crim. App. 2008); *Good v. Texas*, 723 SW2d 734, 737 (Tex. Crim. App. 1986); *Washington v. Klok*, 992 P2d 1039, 1041 (Wash. Ct. App. 2000). See *Taylor v. Kentucky*, 436 U. S. 478, 485 (98 SC 1930, 56 LE2d 468) (1978) ("This Court has declared that one accused of a crime is entitled to have his [or her] guilt or innocence determined solely on the basis of the evidence introduced at trial. . . .").

[9] *Watson v. State*, 278 Ga. 763, 775 (604 SE2d 804) (2004); *Greene v. State*, 266 Ga. 439, 449 (469 SE2d 129) (1996), overruled on other grounds sub nom. *Greene v. Georgia*, 519 U. S. 145 (117 SC 578, 136 LE2d 507) (1996); *Christenson v. State*, 261 Ga. 80, 88-89 (402 SE2d 41) (1991); *Johnson v. State*, 256 Ga. 588, 591 (351 SE2d 202) (1987). Accord *James v. Alabama*, 564 S2d 1002, 1007 (Ala. Crim. App. 1990); *Armstrong v. Arkansas*, 233 SW3d 627, 637-639 (Ark. 2006); *Massachusetts v. Smith*, 444 NE2d 374, 380 (Mass. 1983); *North Carolina v. Brown*, 358 SE2d 1, 14-16 (N.C. 1987); *Ohio v. Hill*, 661 NE2d 1068, 1078 (Ohio 1996). See generally Laurie L. Levenson, *Courtroom Demeanor: The Theater of the Courtroom*, 92 Minn. L. Rev. 573 (2008).

handful of comments in the prosecution's closing argument discussed above, there is a reasonable probability that the outcome of the trial would have been more favorable to them. Consequently, they have failed to establish the requisite prejudice to support an ineffective assistance of counsel claim.

(b) *Objection to Presence in Jury Room of Two Sign Language Interpreters.* Smith and Lightburn contend their attorneys rendered ineffective assistance of counsel by failing to object to the presence in the jury room of two sign language interpreters. They concede that it was proper for one sign language interpreter to be in the jury room to facilitate communication among the jurors because there was a hard-of-hearing juror on the panel. However, they claim there was no reason to allow two interpreters in the jury room the whole time because if one needed a break, they could simply switch out. Smith and Lightburn insist that the presence of the extra interpreter — a "stranger" to the jury — gives rise to a presumption of prejudice that the State has not overcome. Thus, they assert that defense counsel's failure to object was unprofessional, and that had an objection been raised, the outcome of the proceedings would have been different.

There was no error in defense counsel's decision not to object to the presence of two sign language interpreters in the jury room. The interpreters explained at trial that they work in tandem so that when their hands tire, they can switch up without any loss of continuity or communication among the jurors. The effect of accepting Smith and Lightburn's argument and enshrining it into law would be either pointless disruption and delay in jury deliberations for the periodic changing out of interpreters in any case with both hard-of-hearing and other jurors on the panel or, more likely, repeated severance, however brief, of the communication link among the jurors during deliberations as one interpreter leaves the jury room and the other one comes in.

Georgia law is emphatic on this point: "It is the policy of the State of Georgia to secure the rights of hearing impaired persons . . . [to] equally participate in [and] benefit from proceedings, programs, and activities of the courts" through the use of "qualified interpreters" made available to assist them.[10] Allowing two sign language interpreters working in tandem to be present in the jury room is a reasonable accommodation, and defense counsel did not err in failing to object to the practice at trial.

In a variation on this argument, Smith and Lightburn contend defense counsel should have objected to the trial court's swearing in of the sign language interpreters outside the jury's presence and

---

[10] OCGA § 24-9-100.

requested elaborate instructions to the jury on the limited role of the sign language interpreters in the jury room. However, the defendants have pointed us to no binding authority requiring that a sign language interpreter not only swear to "interpret all communications in an accurate manner to the best of his [or her] skill and knowledge,"[11] but also do so in front of the jury.

The one case defendants mention, an opinion by New York State's highest court, says that while "[c]ertain outsiders, such as a bailiff or other court official, may inhibit or influence the jury by their mere presence," a sign language interpreter "is a neutral figure, associated only with a fellow juror [or jurors], and her [or his] presence should not have such an effect."[12] The opinion notes the concern that an interpreter will actually participate in the deliberations instead of merely interpreting and suggests several ways the risk of that happening can be minimized, such as instructing interpreters and jurors that such participation would be improper, directing jurors to report any breach of the interpreter's proper role to the court, and swearing interpreters to keep the confidences of the jury room. The opinion does not hold that the only way to ensure that sign language interpreters do not improperly insinuate themselves into jury deliberations is to make them take the interpreter's oath in front of the jury.[13]

Moreover, the jury needed no special instruction on the role of the sign language interpreters. Interpreters for the deaf and hard of hearing are a regular sight at public events, and it is common knowledge that their sole purpose is to operate as an accurate conduit for the translation of the signed word into the spoken word and vice versa. Smith and Lightburn have pointed us to no errors in translation by the interpreters at trial, and there is no indication that any of the jurors misunderstood the interpreters' limited role. The defendants have failed to demonstrate error in trial counsel's performance as it relates to the sign language interpreters.

In any event, the evidence of Smith and Lightburn's guilt was overwhelming. They have presented nothing to suggest that had defense counsel followed their post hoc advice and objected to the presence of both interpreters in the jury room or requested detailed jury instructions on their proper role, there is a reasonable probabil-

---

[11] OCGA § 24-9-107 (a).

[12] *New York v. Guzman*, 555 NE2d 259, 263 (N.Y. 1990).

[13] In this case, the trial court had the two sign language interpreters take an oath swearing that during jury deliberations, they would "interpret what other jurors are saying and what she's saying [i.e., the hard-of-hearing juror]" and "not interject your own opinions, conclusions, or comments." Smith and Lightburn have presented not one shred of evidence that the interpreters did anything other than comply fully with their oath, and trial counsel had no reason to suspect they would do otherwise.

ity that the outcome of the trial would have been more favorable to them. Accordingly, they have not established *Strickland* prejudice.

3. *Smith's Additional Ineffective Assistance of Counsel Claim.* In an enumeration of error not joined in by Lightburn, Smith contends his trial counsel rendered ineffective assistance by failing to call a witness to impeach Morris's trial testimony. Smith concedes that there was overwhelming evidence that violent men entered Gresham's house, tortured and murdered him, and bound, kidnapped, injured, and robbed Morris. Smith asserts that his sole defense at trial was that he was outside in the vehicle when the home invasion took place and knew nothing of his colleagues' plans. According to Smith, Morris was the only witness who testified that Smith was actually in Gresham's house, and he claims that any evidence undermining Morris's credibility was thus crucial to his defense. Thus, Smith argues that trial counsel performed in a professionally deficient manner by failing to call to the witness stand the officer who took Morris's initial statement to the police to impeach Morris's credibility based on inconsistencies between Morris's original statement and his trial testimony.

The statement taken by the officer, which was admitted into evidence at trial, indicates that Morris said three men, not four, took part in the crimes. In addition, it does not mention Smith by name, even though Morris knew him before the incident. If called to the stand, the officer would have testified that he was 100% positive that Morris said that only three men had entered the home, and he had contemporaneous notes corroborating this assertion. However, Morris was challenged repeatedly on cross-examination about the discrepancies between his trial testimony and his initial statement to police, and Smith's trial counsel explained at the hearing on the new trial motions that he saw no need to call the officer at trial because by the time he was through with Morris on cross, Morris's credibility was completely shot. Smith's attorney was also concerned that if he called the officer to the stand, the officer would have the opportunity to minimize the significance of the inconsistencies by suggesting that Morris left out some details in his initial statement only because he was so traumatized by the crimes, thereby strengthening the prosecution's case.

It is well settled that "(s)trategic decisions regarding . . . which witnesses to call are within the exclusive province of the attorney after consultation with the client," and as long as such decisions are reasonable, they "do not amount to ineffective assistance" of counsel.[14] As the testimony at the hearing on the motions for new trial

---

[14] *McDougal v. State*, 284 Ga. 427, 428 (667 SE2d 592) (2008) (punctuation omitted).

showed, the decision by Smith's trial counsel not to call the officer as an impeachment witness at trial was a strategic one, and we agree with the trial court that it was reasonable. Thus, Smith has failed to demonstrate deficient performance. In addition, in light of the extensive evidence of Smith's guilt and defense counsel's sifting cross-examination of Morris regarding the inconsistencies, the trial court was correct to find that Smith failed to demonstrate a reasonable probability that the outcome of the trial would have been different if the officer had been called to the stand at trial.

4. *Lightburn's Right to Be Present.* Lightburn raises an additional enumeration of error not joined in by Smith that is not couched in terms of ineffective assistance of counsel. The trial was put off two days in a row because of Lightburn's unconfirmed claims that he was too ill to proceed. On the third day, Lightburn again complained of illness, but this time, the trial court rebuffed his request to delay the trial yet again. The trial court later noted that Lightburn had exhibited no problems at recent pretrial hearings, that his sudden bouts of illness seemed to coincide solely with the trial court's attempts to start the trial, and that whenever medical personnel examined him, they could find nothing wrong with him that would prevent him from sitting through the trial.

Having failed to delay the trial a third time with unsubstantiated claims of illness, Lightburn, whether self-induced or otherwise, vomited in the courtroom. The jurors were taken out, and the trial court discussed with counsel and Lightburn how they should proceed.

It was the second day of voir dire with the same jury panel. The trial court denied Lightburn's request to dismiss the jury panel and start over again the following week, finding the jury would not be prejudiced by having seen Lightburn become sick in the courtroom.[15] When the trial court indicated its intent to proceed, Lightburn's counsel objected that he would be prejudiced if the jurors saw him writhing in pain on the floor or vomiting into a trash can. The trial court stated that if Lightburn were truly concerned about that, he could simply leave the courtroom before the jury panel was brought back in. However, Lightburn's attorney rejected this option, claiming that Lightburn would also be prejudiced if the jury were brought back in and did *not* see his client there.

---

Accord *Fairclough v. State*, 276 Ga. 602, 605 (581 SE2d 3) (2003).

[15] On questioning, the prospective jurors said their judgment in the case would not be affected by having seen Lightburn throw up in the courtroom, and the trial court repeatedly instructed the jury to disregard Lightburn's illness and not let it affect their decision in the case.

At that point, the trial court granted Lightburn's request to be removed from the courtroom. The trial court brought the jury panel back in and released them early for the long Memorial Day weekend. Before doing so, however, the trial court excused a prospective juror so that she could attend a relative's graduation ceremony. Lightburn contends that the excusal of this juror after his removal from the courtroom violated his constitutional right to be present.

The United States Supreme Court has long recognized that a criminal defendant's right to be present at all critical stages of the proceedings against him is a fundamental right and a foundational aspect of due process of law.[16] This Court's interpretation of the analogous provisions of the Georgia Constitution has always been in accord.[17] However, the right to be present belongs to the defendant, and the defendant is free to relinquish it if he or she so chooses.[18] The right is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.[19]

To the extent Lightburn's claim rests on his federal constitutional right of presence, it is easily resolved. For there is a critical difference between the right to be present protected by the Georgia Constitution and the corresponding federal constitutional right. Under governing Supreme Court precedent, denial of the federal constitutional right to be present is subject to harmless error review on direct appeal.[20] As indicated above, the evidence of Lightburn's guilt was overwhelming, and the trial court did not abuse its discretion in excusing the juror to attend her sister's graduation.

---

[16] *Tennessee v. Lane*, 541 U. S. 509, 523 (124 SC 1978, 158 LE2d 820) (2004) ("The Due Process Clause [of the Fourteenth Amendment] and the Confrontation Clause of the Sixth Amendment . . . both guarantee to a criminal defendant . . . the 'right to be present at all stages of the trial where his [or her] absence might frustrate the fairness of the proceedings.'") (quoting *Faretta v. California*, 422 U. S. 806, 819, n. 15 (95 SC 2525, 45 LE2d 562) (1975)). See also *Snyder v. Massachusetts*, 291 U. S. 97, 105-108 (54 SC 330, 78 LE 674) (1934).

[17] *Wilson v. State*, 212 Ga. 73, 74 (90 SE2d 557) (1955) ("It is the legal right of a person accused of crime in this State to be present at all stages of his trial, such right being derived from our Constitution. This principle has been recognized since the establishment of this court.") (citation omitted); *Wade v. State*, 12 Ga. 25, 29 (1852) ("The defendant has not only the right to be confronted with his witnesses, but he has also the right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court.") (emphasis omitted).

[18] *Snyder v. Massachusetts*, supra, 291 U. S. at 106 ("No doubt the privilege may be lost by consent . . . ."); *Pennie v. State*, 271 Ga. 419, 421 (520 SE2d 448) (1999) ("It is true that a defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant.").

[19] *Pennie v. State*, supra, 271 Ga. at 421; *Wilson v. State*, supra, 212 Ga. at 77-78.

[20] *Rose v. Clark*, 478 U. S. 570, 576 (106 SC 3101, 92 LE2d 460) (1986); *Rushen v. Spain*, 464 U. S. 114, 117-120 (104 SC 453, 78 LE2d 267) (1983).

Accordingly, we have no difficulty concluding that even if Lightburn's federal constitutional right to be present was violated in the manner he alleges, he is not entitled to a new trial, because the record establishes his guilt beyond a reasonable doubt.[21]

Georgia law treats the right to be present differently. Under our existing case law, which neither side has asked us to revisit here, denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal.[22] Instead, a violation is presumed to be prejudicial.[23] Thus, absent a valid waiver, violation of the right to be present triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal.[24]

It goes without saying that jury selection is a critical stage of the proceedings at which a criminal defendant has a constitutional right to be present.[25] Thus, the right to be present is implicated here. However, the trial court found that the "allegedly-ill Lightburn" had waived his right to be present by repeatedly delaying the start of trial with his malingering conduct and by failing to object when his attorney, in Lightburn's presence, specifically requested that the trial court remove Lightburn from the courtroom before bringing the jury panel back in. The trial court also noted that there was no contemporaneous objection by defense counsel to the excusal of the juror or to Lightburn's removal from the courtroom. The record confirms the trial court's findings.

A defendant who voluntarily absents himself from the proceedings has waived his right to be present.[26] Moreover, no contemporaneous objection to the trial court's course of action was raised. Accordingly, the trial court did not err in denying Lightburn's motion for new trial on this ground.

---

[21] *Rose v. Clark*, supra, 478 U. S. at 576 ("In *Chapman v. California*, 386 U. S. 18 [(87 SC 824, 17 LE2d 705)] (1967), this Court rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. And since *Chapman*, 'we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' *Delaware v. Van Arsdall*, 475 U. S. 673, 681 [(106 SC 1431, 1436, 89 LE2d 674)] (1986).").

[22] *King v. State*, 273 Ga. 258, 264 (539 SE2d 783) (2000); *Holsey v. State*, 271 Ga. 856, 860-861 (524 SE2d 473) (1999).

[23] *Sammons v. State*, 279 Ga. 386, 387 (612 SE2d 785) (2005); *Pennie v. State*, supra, 271 Ga. at 422.

[24] *Peterson v. State*, 284 Ga. 275, 279 (663 SE2d 164) (2008); *Carter v. State*, 273 Ga. 428, 430 (541 SE2d 366) (2001).

[25] See *Sammons v. State*, supra, 279 Ga. at 387 ("Proceedings at which the jury composition is selected or changed are a critical stage at which the defendant is entitled to be present.").

[26] *Dawson v. State*, 283 Ga. 315, 322 (658 SE2d 755) (2008); *Taylor v. United States*, 414 U. S. 17, 17-20 (94 SC 194, 38 LE2d 174) (1973).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 3, 2008.

*Brian Steel,* for appellant (case no. S08A1496).
*Gerard B. Kleinrock,* for appellant (case no. S08A1581).
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Barbara B. Conroy, Roderick B. Wilkerson, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.