308 Ga. 63
FINAL COPY

S19A1637.  LONDON v. THE STATE.

ELLINGTON, Justice.

Following a jury trial, LaParrish London was convicted of the malice murder of Eric Terrell.[1]  London contends on appeal that (1) the evidence was insufficient to support his conviction, (2) the trial court erred in denying his motion for new trial, (3) the trial court erred in admitting hearsay, and (4) his trial counsel was ineffective.

---

[1] Terrell was killed on March 24, 2015. London was indicted by a DeKalb County grand jury for the offenses of malice murder, felony murder predicated on armed robbery, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, armed robbery, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. A nolle prosequi was later entered on the counts of felony murder predicated on possession of a firearm by a convicted felon and possession of a firearm by a convicted felon. London was tried before a jury in February 2017. The jury found London guilty of malice murder, felony murder predicated on aggravated assault, and aggravated assault; he was found not guilty of the remaining charges. The trial court sentenced London to life imprisonment on the malice murder count and merged the aggravated assault into the malice murder; the felony murder count was vacated by operation of law. London filed a timely motion for new trial on March 15, 2017, which he amended three times. Following a hearing, the trial court denied the motion on June 10, 2019. London's timely appeal was docketed in this Court for the August 2019 term and submitted for decision on the briefs.

We affirm for the reasons set forth below.

Viewed in a light most favorable to the verdicts, the evidence presented at trial showed the following. After responding to a 911 call placed at 2:32 a.m. on March 24, 2015, police officers found Terrell's body lying face down in a pool of blood in the parking lot of the Portofino apartment complex in DeKalb County. Terrell had been shot four times in the head and face. Shortly after the shooting, an apartment resident saw two men running toward the front of the complex.

Terrell's car was parked five to six feet away from his body. Blood covered the driver's seat of the car and both the inside and outside of the driver's side front window. Terrell's pants had been pulled down and his pockets had been pulled out. Officers found 9mm cartridge casings, a 9mm live round, and a .38-caliber bullet at the crime scene.

A later search of Terrell's car revealed four bags of cocaine. A fingerprint analyst determined that five latent fingerprints found on the passenger door frame and window of Terrell's car were a match

2

for London's fingerprints.

Terrell's cell phone records showed numerous calls to Terrell's phone less than an hour before the shooting from a cell phone number registered in the name of "Blakk London." An investigator determined that London's picture was associated with the "Blakk London" phone number.

The "Blakk London" cell phone records also showed contact with Jeffrey Burks. At trial, Burks testified that on the morning of the murder he called London between 2:00 a.m. and 3:00 a.m., but London did not answer the phone. The following day, Burks picked up London and drove him to a Motel 6. Although Burks testified at trial that he could not remember London saying something to him about a gun for sale, the officer who interviewed Burks testified that during the interview Burks told the officer that London had "said something about trying to sell a gun."

In May 2015, during the course of an unrelated burglary investigation, City of Clarkston police officers arrested brothers Donnell Reed and Darnell Reed on charges of theft by receiving and

marijuana possession, respectively, after which they were interviewed in connection with Terrell's murder. The Reed brothers testified at London's trial. Donnell Reed testified that in March 2015 he had been living in a building at the Portofino Apartments. After the shooting, London told Donnell Reed, "you remember what happened in the back, I did that." Donnell Reed acknowledged telling a detective that he saw London with a "big" 9mm gun at that time.

Darnell Reed testified that he did not remember being interviewed by police or giving a written statement following his arrest in May 2015. Darnell Reed's video interview and his written statement to the police were admitted into evidence and published to the jury. In his written statement, Darnell Reed wrote that "Solo," which other testimony showed to be London's nickname, and another individual, Cameron, "came to [Darnell Reed's] spot 2 days after the murder and told [Darnell Reed] they set up the guy to rob him, and Cam shot him first and Solo finish[ed] him."

1. London contends that the evidence was insufficient to

support his murder conviction. When evaluating the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

The indictment alleged that London "did with malice aforethought cause the death of Eric Terrell[,] a human being, by shooting him with a handgun[.]" London points out that the State did not present the testimony of any eyewitness to Terrell's shooting. However, London admitted to Darnell Reed that he and a second individual were responsible for the recent murder at the Portofino apartments, and a witness saw two men running toward the front of the apartments after the shooting. The crime scene, where Terrell was found with his pockets turned out, was consistent with London's statement to Darnell Reed that the victim was "set up" for a robbery. London and Terrell had been in contact through their cell phones shortly before the shooting, and the forensic evidence showed that

5

London left his fingerprints on Terrell's car. Donnell Reed recalled seeing London with a 9mm weapon, 9mm shell casings were found at the crime scene, and London's statements to Burks showed that he was trying to sell his weapon shortly after the murder. The evidence was sufficient to sustain London's conviction for Terrell's murder. See *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

2. London contends that the trial court erred in denying his motion for a new trial on the general grounds because the trial court failed to appropriately fulfill its role as the "thirteenth juror." A trial court may grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity[,]" OCGA § 5-5-20, or "where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21. "When properly raised in a timely motion, these grounds for a new trial — commonly known as the 'general grounds' — require the trial judge to exercise a broad discretion to sit as a 'thirteenth juror.'" *White v. State*, 293 Ga. 523, 524 (2) (735 SE2d

6

115) (2013) (citation and punctuation omitted).  In the exercise of that discretion, "the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." Id. (citation omitted).

In its written order, the trial court set forth the correct standard in ruling on a motion on the general grounds, including its responsibility to exercise its discretion as the "thirteenth juror." Following its independent examination of the evidence, the trial court declined to grant London a new trial. As the trial court exercised its discretion as the "thirteenth juror," and as this Court has found the evidence sufficient to support the verdict, we identify no abuse of discretion in the trial court's denial of the motion for new trial.  See *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017).

3. London claims that the trial court erred in admitting Darnell Reed's written statement to police and the video recording of his police interview because those statements constituted inadmissible hearsay. He further contends that the statements' admission

7

violated the Confrontation Clause of the State and Federal Constitutions because Darnell Reed had no memory of the events about which he had been called to testify. We conclude that the written statement and the video interview were admissible under OCGA § 24-6-613 (b) as prior inconsistent statements and that there was no Confrontation Clause violation because Darnell Reed was available for cross-examination.

At trial, a police officer testified that he took Darnell Reed's written statement following his arrest in May 2015. The statement was admitted by the trial court "for the record only," and with the limitation that the State could not then disclose its contents to the jury. Darnell Reed subsequently testified that he did not remember being interviewed by the police or making a written statement following his arrest. When the prosecutor presented Darnell Reed with the written statement, he contended that he did not recognize the handwriting or the signature at the bottom of the document, and he maintained that the signature was not his signature. Darnell Reed maintained that he could not recall anything from his police

8

interview. According to Darnell Reed, he did not have "the best memory" after being shot in the head two years earlier. Darnell Reed was then cross-examined by the defense.

Following its authentication by the testimony of a police officer, a redacted version of Darnell Reed's police interview recording was admitted and played for the jury. A transcript of the interview was provided to the jury during the playing of the video recording. Darnell Reed's written statement was then published to the jury.

(a) Extrinsic evidence of a witness's prior inconsistent statement is admissible under OCGA § 24-6-613 (b) if "the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require." A witness's failure "to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the statement was made." *Brewner v. State*, 302 Ga. 6, 17 (V) (804 SE2d 94) (2017) (citations omitted). See also *Murdock v. State*, 299 Ga.

9

177, 180 (4) (787 SE2d 184) (2016) (A witness's failure "to remember making a statement, like the witness's flat denial of the statement, may provide the foundation for calling another witness to prove that the statement was made.") (citation and punctuation omitted)); *Hood v. State*, 299 Ga. 95, 99 (2) (786 SE2d 648) (2016) (same). The State laid the foundation for the admission of Darnell Reed's prior statements by giving him an opportunity to explain or deny the statements, which he contended he could not recall. The statements were not inadmissible hearsay. See OCGA § 24-8-801 (d) (1) (A) (prior inconsistent statement meeting the requirements of OCGA § 24-6-613 (b) is not hearsay if the declarant testifies at trial and is subject to cross-examination).

(b) Nor was London denied his right to confront Darnell Reed. The Confrontation Clause affords "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (106 SCt 292, 88 LE2d 15) (1985) (citation and emphasis omitted). A witness's memory loss does not foreclose

10

the opportunity for effective cross-examination. See *United States v. Owens*, 484 U. S. 554, 564 (108 SCt 838, 98 LE2d 951) (1988) (The Confrontation Clause is not violated "by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification."); *Fensterer*, 474 U.S. at 21-22 ("The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion."). London's trial counsel cross-examined Darnell Reed at length and secured, among other things, Darnell Reed's admission that he "wouldn't even trust [his] own words." See *Brown v. State*, 266 Ga. 723, 725 (2) (470 SE2d 652) (1996) ("The [S]ixth [A]mendment . . . is satisfied if a defendant is given the opportunity to cross-examine a forgetful witness about his bias, his lack of care and attentiveness, and even the very fact that he has a bad memory.") (citation and punctuation omitted)).

In view of the foregoing, the trial court did not err in the admission and publication of Darnell Reed's out-of-court

statements.

4. Lastly, we address London's claim that his trial counsel was ineffective in failing to object and move for a mistrial in light of the prosecutor's numerous improper statements during closing argument impugning the character of trial counsel. To succeed on his claim of ineffective assistance, London

> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [London] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [London] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citation and punctuation omitted.) *Haney v. State*, 305 Ga. 785, 790 (2) (827 SE2d 843) (2019). See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984).

During her initial closing argument, the prosecutor argued that a number of statements made by London's trial counsel in his

12

opening statement had not been supported by the evidence. In that context, she contended that the jury had been "purposely misled" by trial counsel, and that trial counsel had made "disturbing," "disgusting," and "shameful" statements. The prosecutor characterized trial counsel as "very smug" and asserted that trial counsel "doesn't get to decide whose life is valuable." The prosecutor maintained that trial counsel ought to "apologize to the victim's family." Following closing argument by the defense, the prosecutor argued that trial counsel was "playing fast and loose with the facts."

London's trial counsel testified at the motion for new trial hearing that he had strategic reasons for not objecting to the State's closing argument. He maintained that he did not want to "draw attention" to the prosecutor's comments and that, in addition, he was then able to "respond in kind" in his own closing argument. The transcript shows that in his closing argument trial counsel employed some of the same terminology used by the prosecutor.[2]

---

[2] For example, trial counsel argued that the other shooter, Cameron, "is not here as a witness or a defendant. That's disgusting," and "I'm not tippy-

Generally, "closing argument is appropriate as long as it is based on evidence that is properly before the jury." *Smith v. State*, 284 Ga. 599, 602 (2) (a) (669 SE2d 98) (2008). The prosecution and defense are afforded wide latitude in making closing argument in a criminal trial. *Spiller v. State*, 282 Ga. 351, 354 (674 SE2d 64) (2007). We assess closing arguments "in the context in which they are made." *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008). However, "counsel should adhere to the highest standards of professionalism and proper courtroom decorum, and, accordingly, we find distasteful any argument that unnecessarily impugns the integrity of opposing counsel, even if obliquely." *Gissendaner v. State*, 272 Ga. 704, 713 (10) (a) (532 SE2d 677) (2000) (citations omitted).

Here, we cannot approve of the prosecutor's use of inflammatory language tending to impugn the character of trial counsel or her direct personal attacks on trial counsel, particularly

---

toeing. Yeah, we are talking about a drug dealer out there at 1 or 2 o'clock in the morning, selling drugs as if that's nothing. That's shameful and embarrassing."

her characterization of him as "smug," and her assertion that he should apologize to the victim's family. See *Miller v. State*, 228 Ga. App. 754, 757 (6) (492 SE2d 734) (1997) ("Personal remarks have no place in the State's closing argument." (citation omitted)). The trial court would not have abused its discretion in sustaining an objection to such remarks. "Nevertheless, there are often sound tactical reasons for not objecting to every improper statement made by the prosecution during closing argument." *Smith*, 284 Ga. at 602 (2) (a). Apart from several improper remarks, the prosecutor made a closing argument based on the evidence, and trial counsel responded with a closing argument based on the evidence while appropriating, as a rhetorical device, some of the language previously employed by the prosecutor. It was within the wide range of reasonable professional assistance for trial counsel to decline to object to the prosecutor's improper remarks and therefore did not constitute ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 10, 2020.
Murder. DeKalb Superior Court. Before Judge Jackson.
*Kenneth W. Sheppard*, for appellant.

*Sherry Boston, District Attorney, Emily K. Richardson, Harry S. Ruth, Lenny I. Krick, Shannon E. Hodder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.