FINAL COPY
309 Ga. 573

S20A1027.  ARNOLD v. THE STATE.

BETHEL, Justice.

Slyrika Arnold was found guilty of malice murder and other

crimes in connection with the fatal shooting of Curtis Pinkney, Jr.[1]

---

[1] The crimes occurred on October 7, 2011. On January 3, 2012, Arnold and co-defendant Jemario Solomon were indicted by a Fulton County grand jury for malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, and possession of a firearm during the commission of a felony. Arnold and Solomon were charged separately with one count each of possession of a firearm by a convicted felon.

At a joint jury trial from February 25 through 27, 2013, the jury found Arnold and Solomon guilty on all counts with which each was charged. The trial court sentenced Arnold to life imprisonment for malice murder, a term of imprisonment of five years to be served consecutively for possession of a firearm during the commission of a felony, and a term of imprisonment of five years to be served consecutively for possession of a firearm by a convicted felon. The trial court merged the aggravated assault count with the malice murder count. It also purported to merge the felony murder counts with the malice murder count, but those counts were actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Solomon was also sentenced and has already appealed to this Court. We affirmed his convictions and sentence in *Solomon v. State*, 304 Ga. 846, 847-848 (1) (823 SE2d 265) (2019).

On March 22, 2013, Arnold filed a motion for new trial, which he amended through new counsel on August 1, 2016. After a hearing on June 21, 2019, the trial court denied the motion for new trial, as amended, on February 3, 2020. Arnold filed a notice of appeal to this Court on February 3, 2020. This case was docketed to this Court's April 2020 term and was submitted for a decision on the briefs.

Arnold's sole contention on appeal is that he received ineffective assistance of counsel because trial counsel did not object to three statements that the prosecutor made in his closing argument. We affirm because Arnold has failed to show that his trial counsel's performance was constitutionally deficient.

1. This Court has previously considered the appeal of Arnold's co-defendant, Jemario Solomon. As set forth by this Court in that appeal, the evidence presented at trial, viewed in the light most favorable to the verdicts, showed the following:

> [A] few days prior to October 7, 2011, Pinkney and his friend, Deronte Kendall, got into an argument with [Jemario] Solomon's girlfriend at a Chevron gas station in southwest Atlanta. On October 7, Solomon threatened Pinkney over the dispute. That evening, Solomon and his brother, Slyrika Arnold — both convicted felons — walked to the same Chevron, each with a loaded handgun.
> Upon arrival, Solomon entered the Chevron, while Arnold walked to a restaurant next door. Shortly thereafter, Pinkney and Kendall — both unarmed — entered the Chevron to purchase beer. Solomon started to argue with Pinkney. While he tried to entice a reluctant Pinkney to fight him, Solomon visibly kept his hand on his loaded handgun. Finally, Pinkney agreed to fight Solomon but not while he had a firearm. When Solomon and Pinkney agreed to fight, Solomon handed the firearm to Arnold (who had entered the Chevron while Solomon

and Pinkney were arguing), and Arnold put the weapon in his pocket. Pinkney and Solomon then began to fight. As soon as the fight began, Arnold pulled his own firearm and pointed it at Pinkney throughout the fight. Pinkney gained the upper hand in the fight and knocked Solomon to the floor. At this point, Arnold shot Pinkney in the side with his firearm. Pinkney later died as a result of the gun shot. Arnold and Solomon fled the scene together. When he was interviewed by investigators, Solomon falsely blamed Kendall for the shooting. The Chevron's surveillance cameras captured the fight and shooting.

*Solomon v. State*, 304 Ga. 846, 847-848 (1) (823 SE2d 265) (2019).

After the shooting, Arnold fled and remained at large until found by a fugitive unit three-and-a-half months later. In a custodial interview, after being given *Miranda*[2] warnings, Arnold claimed that he shot Pinkney because Pinkney "rushed" him while he was attempting to end the fight between Pinkney and Solomon. At trial, however, Arnold testified in his own defense that he did not attempt to stop the fight prior to shooting Pinkney and that Pinkney did not rush him. Arnold claimed instead that he shot Pinkney in defense of Solomon, who was a close friend and half-brother of Arnold.

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Although Arnold does not challenge the sufficiency of the evidence to support his convictions, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient to sustain each count for which the appellant was found guilty and sentenced.[3] Just as we concluded that the evidence was sufficient to convict Arnold's co-defendant Solomon as a party to the crimes Arnold was found guilty of committing directly, the evidence was also sufficient to support Arnold's conviction on those offenses. See *Solomon*, 304 Ga. at 848 (1); *Woolfolk v. State*, 282 Ga. 139, 140 (1) (644 SE2d 828) (2007) (decision about sufficiency of evidence for co-defendant's guilt as party to the crime entailed decision that evidence was sufficient to find co-defendant who directly committed the crime guilty); see also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); OCGA § 16-2-20. The evidence was also sufficient

---

[3] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (___ SE2d ___) (2020). The Court began assigning cases to the December term on August 3, 2020.

to authorize a rational jury to find Arnold guilty of possession of a firearm by a convicted felon.

2. Arnold argues that his trial counsel provided ineffective assistance because she did not object to three statements that the prosecutor made in his closing argument. We disagree.

To succeed on his claim of ineffective assistance of counsel, Arnold must show both that his trial counsel's performance was professionally deficient and that trial counsel's deficient performance prejudiced him. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Arnold must show that no reasonable lawyer would have taken or forgone the action that Arnold's defense counsel took or forwent at trial, overcoming a strong presumption to the contrary. See *Humphrey v. Nance*, 293 Ga. 189, 192 (II) (A) (1) (744 SE2d 706) (2013) ("[I]n reviewing trial counsel's performance, we ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." (citation and punctuation omitted)). To establish prejudice, Arnold

must show that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Ford v. Tate*, 307 Ga. 383, 386 (II) (A) (835 SE2d 198) (2019). As Arnold must show both deficiency and prejudice in order to succeed on his ineffective assistance of counsel claim, this Court does not need to "approach the inquiry in the same order or even to address both components of the inquiry if [Arnold] makes an insufficient showing on one." *Strickland*, 466 U. S. at 697 (IV).

(a) Arnold first contends that trial counsel performed deficiently by failing to object to the following portion of the prosecutor's closing argument on the grounds that it injected extrinsic and prejudicial matters that had no basis in evidence:

> They don't have to sit down — and I'm going to tell you, they didn't — sit down at the house and sketch it out. Okay, I'm going to come in, and I'm going to sit here, and you're going to already be fighting, and then you give me the gun. Doesn't have to be like that. Think about it. I was in the military, and we were overseas, and I was part of a team of folks that I did a lot of really hard training with,

so we were tight. In many ways we were tighter than myself and my brother. Just specifically a guy named Joe Perada, he and I went from boot camp to every bit of training I went through, and then we were out overseas together. Now, we could be approaching an area, many times it was a village, like a small house, okay, looking for weapons. We could hear a noise, he could look at me, and I would know, he's going to go around back. It's not like T.V. where you're going to do all the hand signals. He would look at me and I would know. I would know what he was going to do. You could say we were almost like brothers in that regard. Okay?

"A prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion. Within that wide latitude, a prosecutor may comment upon and draw deductions from the evidence presented to the jury." (Citation and punctuation omitted.) *Gaston v. State*, 307 Ga. 634, 640 (2) (b) (837 SE2d 808) (2020). In so doing, the prosecutor is allowed to make illustrations that "may be as various as are the resources of his genius." (Citation and punctuation omitted.) *Head v. State*, 276 Ga. 131, 135 (6) (575 SE2d 883) (2003). Such illustrations may include analogies that have some basis in evidence. See, e.g., *Humphrey v. Lewis*, 291 Ga. 202, 216 (V) (A) (iii) (728 SE2d 603) (2012) (permissible to analogize to O.J. Simpson case when ownership of

gloves at issue), overruled on other grounds by *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020); *Carr v. State*, 267 Ga. 547, 555 (7) (a) (480 SE2d 583) (1997) (permissible to analogize to Menendez brothers trial because of defendant's testimony that his father sexually abused him as a child).

Here, the prosecutor referenced the evidence that Solomon had talked with a third party about his intentions when he next saw Pinkney, asking the jury to draw the conclusion that Arnold and Solomon, whom the evidence showed were close friends and half-brothers, had, at the very least, a generalized plan or agreement to kill Pinkney when they next encountered him. To support his argument that the conclusion was justified even absent evidence of extended or formal deliberation, the prosecutor offered a permissible analogy about military brotherhood, illustrating how people with close relationships, like Arnold and his half-brother Solomon, could jointly execute a plan, the details of which were quickly formed. Because there was an evidentiary basis for counsel's deductions giving rise to the illustration about the close bonds between those in

the military, this portion of closing argument was not objectionable, and "trial counsel's failure to make a meritless objection to the State's closing argument is not evidence of ineffective assistance." (Citation and punctuation omitted.) *Gaston*, 307 Ga. at 640 (2) (b). Accordingly, this claim of ineffective assistance fails.

(b) Arnold next claims that trial counsel performed deficiently by failing to object to several portions of closing argument in which the prosecutor made personal attacks on trial counsel. Arnold directs our attention specifically to the following bolded portions of the prosecutor's argument:

> **So don't be — don't be lawyered out of this case. Don't be lawyered out of your common sense.** That's the law. That's this case. He had the gun. He had joint constructive possession of the gun. It was within arm's reach. He's a felon. That's felony murder. It's beyond that. He's guilty of malice, too. Solomon is guilty of malice, too.
>
> . . .
>
> [Arnold's trial counsel] wants you to believe that within one second, that's when he's off camera, one second, he hit him again and again, and he stomped him and he stomped him. . . .
> **Like I said earlier, you know, in these courtrooms, during these trials, the truth, it gets**

**beat up. It gets black eyes and it gets beat up. But every time it shines through. In every case I try it shines through. And this is it. The defense did it for you. This is the truth shining through right here.** . . .

And look, he's not even fully on the ground yet. Now, again — and she's doing her job, but [Arnold's trial counsel] would have you believe and then he's on the ground and he's down for so long. . . .

**And then she wants to say—you know, she says that this is where, just like Mr. Arnold said, Mr. Pinkney shoved at him. And, I'm sorry, but that's pretty much offensive. He didn't shove at him.**

. . .

**At one point [Arnold's trial counsel] said that Curtis attacked Solomon. I mean, you see how things get twisted, how the truth gets beat up?** Curtis attacked Solomon? What?

According to Arnold, his trial counsel should have objected to each of these statements.

However, even assuming that the prosecutor's statements were personally disparaging to Arnold's counsel, and thus objectionable, see *London v. State*, 308 Ga. 63, 69 (4) (838 SE2d 768) (2020), trial counsel is not constitutionally deficient for failing to take every action that the law allows counsel to take. See, e.g., *Walker v. State*, __ Ga. __, ___ (4) (843 SE2d 561) (2020) ("Given the lack of a clear

benefit to the defense from even a successful objection to [a witness's] testimony, it would have been objectively reasonable for counsel to decide not to object to avoid drawing attention to the testimony" and counsel was not constitutionally ineffective.); *Mitchell v. State*, 308 Ga. 1, 9 (2) (e) (838 SE2d 820) (2020) (trial counsel not ineffective for failing to impeach witness in every allowable way); *McClure v. State*, 306 Ga. 856, 866 (834 SE2d 96) (2019) (Nahmias, P. J., concurring) ("It is important to recognize, however, that what the law *allows* may be bad *strategy* for a defendant." (emphasis in original)). Instead, trial counsel is only deficient for failing to lodge those objections that every reasonable attorney would have lodged. *Humphrey*, 293 Ga. at 192 (II) (A) (1).

Here, we cannot say that no reasonable lawyer would have failed to object to these statements. "[I]t can be reasonable strategy on the part of trial counsel to remain silent during closing arguments and allow the potentially inappropriate antics of the prosecutor to backfire." (Citation and punctuation omitted.) *Robinson v. State*, __ Ga. __, __ (3) (b) (842 SE2d 54) (2020). As some

reasonable counsel could have made the same decision to not object to the prosecutor's remarks in closing argument, Arnold has not shown that his trial counsel performed deficiently. See *Humphrey*, 293 Ga. at 192 (II) (A) (1). Accordingly, this claim of ineffective assistance fails.

(c) Arnold's final claim of ineffective assistance stems from trial counsel's failure to object to the following passage from the prosecutor's closing argument:

> I'm just going to ask you to do something. I'm going to ask you to send a message that [it] doesn't matter if it's in a Chevron on Campbellton Road or a high-rise in Buckhead, the police, like they did in this case, they're going to do their job. They're going to send the evidence to the crime lab. They're going to find eyewitnesses. They're going to get it on video. The D.A.'s office is going to do its job, no matter who the victim is. And the juries in this community are going to do their job. They're going to take the law, they're going to apply it to the evidence, they're going to use their common sense, and they're going to find them guilty.

Arnold contends that the prosecutor's statement diverted the jury from deciding the case based on evidence of guilt or innocence by introducing broader issues of race and class and that the prosecutor impermissibly urged the jury to conform its verdict to verdicts from

prior juries.

It is not improper for a prosecutor to argue that a jury should send a message to the community by convicting a defendant. See *Poellnitz v. State*, 296 Ga. 134, 136 (3) (765 SE2d 343) (2014) ("[I]t is not improper for a prosecutor to appeal to the jury to convict for the safety of the community or to argue to the jury the necessity for enforcement of the law and impress on the jury its responsibility in this regard." (citation and punctuation omitted)). Moreover, the prosecutor's specific statements that neither the location of the crime nor the identity of the victim mattered were not improper, as they impressed upon the jury its responsibility to enforce the law. See *Faust v. State*, 302 Ga. 211, 220 (4) (c) (805 SE2d 826) (2017) ("[I]t is not improper to emphasize to the jury its responsibility to enforce the law."); *Philmore v. State*, 263 Ga. 67, 69 (3) (428 SE2d 329) (1993) (permissible for prosecutor to argue for uniformity of law enforcement regardless of location in which crime occurred). Here, the prosecutor's requests to the jury did not overstep the permissible bounds of closing argument and invite the jury to decide the case on

anything except whether the evidence adduced at trial shows the defendant's guilt beyond a reasonable doubt. Because trial counsel's objection to this portion of the prosecutor's closing argument would have been meritless, Arnold cannot show deficient performance. See *Gaston*, 307 Ga. at 640 (2) (b). Accordingly, this claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 10, 2020.

Murder. Fulton Superior Court. Before Judge Newkirk.

*Ryan C. Locke*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys, Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General. Meghan H. Hill, Assistant Attorney General*, for appellee.